PETER LOOBY *vs.* JAMES J. REDMOND ET UX.

Third Judicial District, Bridgeport, April Term, 1895. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.|

In a suit to set aside a conveyance alleged to have been obtained by fraud or undue influence from an incapable or weak minded person, the conservator of the latter is not a necessary party to the action; as in this State one may allege his own disability to set aside his contract.

If the ward, in such case, brings his suit " with the advice and consent of his conservator," the latter is not a party to.the action.

The plaintiff, a childless widower, about 60 years old, partially blind, weak minded and inexperienced, but not incapable of making contracts, conveyed all his property consisting of real estate, the equity in which was worth not more than $6,000, to the defendants, upon their oral promise to pay his existing indebtedness and to give him $25 a month during his life, which promise they had hitherto faithfully kept. The defendants had, without compensation or promise of reward, befriended the plaintiff, and rendered him valuable assistance in the care and management of his property, and he preferred and intended that his property should go to them rather than to his heirs, with whom he had not been on friendly terms. He did not thoroughly understand the effect of his deed, but thought that the property, if he should need it, was, and would continue to be, subject to his control and ownership. Upon the hearing of the case the plaintiff stated that he desired that the deed should not be set aside or disturbed. The conveyance was made voluntarily and without persuasion or solicitation upon the part of the defendants. *Held* that under the circumstances disclosed by the finding, the conveyance ought not to be set aside as having been obtained by undue influence or fraud, provided the defendants would, within such time as the trial court might limit, execute and record a declaration of trust embodying the terms of the oral agreement upon which, during the life of the plaintiff, they were entitled to hold the property; but that upon their failure to comply with such requirement, the judgment of the trial court ordering a reconveyance should be renewed and enforced.

Equity will not permit any one acting in a trust or fiduciary relation, to make use of that relation to benefit his own personal interest. But the mere repose of confidence, however great, by one person in another, does not create a fiduciary relation between them. There must also be a duty resting on the latter to protect the former.

Contracts by trustees with their beneficiaries are not void. They are voidable only at the instance of the beneficiary, and then only so far as he demands, or so far as his interests require. It is not the duty of a court of equity to punish a trustee, but to protect the *cestui que trust.*

[Argued April 17th—decided July 19th, 1895.]

SUIT to set aside a conveyance of real estate, and for other equitable relief, brought to the Superior Court in New Haven County and referred to a committee, who found and reported the facts; the court, *George W. Wheeler, J.*, accepted the report of the committee and rendered judgment in favor of the plaintiff, and the defendants appealed for alleged errors in the rulings of the court. *Error in the relief granted; judgment varied as indicated in the opinion.*

The case is fully stated in the opinion.

*Henry Stoddard* and *Charles A. Harrison*, for the appellants (defendants).

The memorandum of decision shows that the learned trial judge, in coming to his decision, substantially ignored those distinctive features of the case at bar which, the defendant insists, differentiates this case from the case of *Nichols* v. *McCarthy*, 53 Conn., 299; and other cases referred to in the memorandum.

The finding of possible disadvantage to Looby in the contract in question, is a conclusion of law from the facts detailed in the committee's report. *Borough of Stamford* v. *Steedwell*, 60 Conn., 85; *Ward* v. *Ward*, 59 id., 198; *Tyler* v. *Waddingham*, 58 id., 376, 386. Such conclusion is not sustained by the facts. The decree, if any, should be directed to protecting Looby, and preserving in him a right to use the property for his proper support during his lifetime, leaving Looby the right to dispose of the rest of his property as he chooses. All that the law requires to make the deed effectual is, that a man should have possession of his reason so as to understand the effect of the act he is about to perform, where there is no insane delusion. *Dennett* v. *Dennett*, 44 N. H., 531–538; *Hemingway* v. *Coleman*, 49 Conn., 391. The weakening or impairment of the mental faculties by old age, disease, or other causes, in and of itself affords no ground for impeaching a party's transaction, provided the party be *compos mentis*, and has the free use of his faculties. *Keightly* v. *Keightly*, 85 Mo., 217–221; *Hemingway* v. *Coleman*, 49 Conn., 390; *Hall* v. *Knappenberger*, 12 West. Rep., 410;

*West* v. *Russell et al.*, 11 N. W. Rep. 812; *Stewart* v. *Flint*, 59 Vt. 144–151; *Howe* v. *Howe*, 99 Mass., 98; *Nace* v. *Boyer*, 30 Pa., 99–111; *Daswell* v. *Roland*, 30 Ind., 342; *Creach* v. *Blood*, 2 Jo. and Lat., 509. The proper and legitimate exercise of an influence fairly and honestly acquired, is not the exercise of an undue influence, and a deed obtained thereby will be sustained if made freely and in the exercise of the maker's judgment. *Sturtevant* v. *Sturtevant*, 116 Ill., 340. The undue influence for which a will or deed will be annulled must be such that the party making it had no free will, but stands *in vinculis*. *Conley* v. *Naylor*, 118 U. S., 135. An influence, even if used, must be a present coercive power, operating at the time of the execution of the deed. *Kimball* v. *Cuddy*, 117 Ill., 213; *Jackson* v. *Rowell*, 4 L. R. A., 637; *Broomfield* v. *Broomfield*, 43 Ill., 147; *Monroe* v. *Barclay*, 17 Ohio, 302; *Hemingway* v. *Coleman*, 49 Conn., 390; *Falk* v. *Turner*, 101 Mass., 494; *Viney* v. *Abbott*, 109 id., 302; 2 Swift's Dig., 75; *McKinley* v. *Hensley*, 74 Mo., 326; *Rutherford* v. *Morris*, 117 Ill., 413; *Chandler* v. *Ferriss*, 1 Harris, 454–464; Redf. Wills, 522; *Cummins* v. *Hurlbutt*, 92 Pa. 165; *Geddis' Appeal*, 80 id., 442; *Richard's Appeal*, 100 id., 51; *Lynch's Appeal*, 97 id., 349; *Multon's Appeal*, 103 id., 286; *Stulze* v. *Shaeffle*, 16 Jurist, 909; *Williams* v. *Goude*, 1 Hagg. Eccl., 577; *Armstrong* v. *Huddleston*, 1 Moore, C. P., 478; *Ekhart* v. *Flowery*, 43 Pa. St., 46; *Davis* v. *Calvert*, 5 Gill & J., 269–302; *Baker* v. *Potter*, 51 Conn., 78.

*William L. Bennett* and *Leverett M. Hubbard*, for the appellee (plaintiff).

The principles of law affirmed in the case of *Nichols* v. *McCarty*, 53 Conn., 318, will not be assailed in this case, and it is not necessary to support them with authority. These principles are applicable to this case, although Redmond was not a trustee, but a confidential adviser. *Gibson* v. *Jeyes*, 6 Ves., 278; *Tate* v. *Williamson*, L. R., 2 Ch. App., 55, 61; *Billage* v. *Southee*, 9 Hare, 439; *Smith* v. *Kay*, 7 H. L., 750; *Mott* v. *Mott*, 49 N. J. Eq., 198; *Cowee* v. *Cornell et al.*, 75 N. Y., 99; *Prioni* v. *Corrigan*, 47 N. J. Eq., 135; *Worrall's*

*Appeal*, 110 Pa. St., 349; *Barnard* v. *Gratz*, 140 N. Y., 256; *Green* v. *Roworth*, 113 id., 462.

ANDREWS, C. J. The defendants were summoned to appear in court to answer unto Peter Looby " who brings this suit with the advice and consent of his conservator William Looby, Jr." These words do not make William Looby, Jr., in any proper sense a party to this action. The statute respecting conservators has been somewhat changed in the recent Revisions, and there have been some instances—where a conservator has been in fact appointed over an incapable person —in which suits like the present one have been brought in the name of the conservator, as such. *Baker, Conservator,* v. *Potter,* 51 Conn., 78; *Nichols, Conservator,* v. *McCarthy,* 53 id., 299; *Palmer* v. *Cheseboro, Conservator,* 55 id., 114. In these cases no question was raised as to the authority of the conservator, and perhaps they ought not to be regarded as establishing a precedent. The conservator is not, however, a strictly necessary party, for in this State a man may allege his own disability to set aside his contract. *Webster* v. *Woodford,* 3 Day, 90; 1 Swift's Digest, 180. The question is not of very great practical importance in this case. It has been treated from the first as though the conservator was a party plaintiff as well as Peter Looby, and no one has taken any exception to it. Still it cannot be overlooked that Peter Looby is the only responsible plaintiff on the record.

The complaint, after stating that Peter Looby was on the first day of January, 1890, the owner of certain real estate in the town of Wallingford, of the value of ten thousand dollars, and describing it, says:—

" On said first day of January, 1890, the mental powers and faculties of said Peter Looby had become weak and enfeebled by age and bodily infirmity, and he continued to become more imbecile and weak in intellect as he advanced in life, so that he was incapable of properly managing business affairs by reason of his mental imbecility, and the defendant, James J. Redmond, on or about the      day of      , 1890, began to ingratiate himself into his confidence, and to

collect rentals from the tenants, and in various other ways to conduct and manage the business affairs of said Peter Looby, and continued to do so until the 24th day of January, 1893, when he took advantage of the said Peter's imbecility and infirmity, and prevailed upon and persuaded him to give and convey to him, the said James J. Redmond, and to his wife, the said Elizabeth, said real estate; and on said 24th day of January, 1893, when the said Peter was extremely debilitated in his mind, and infirm in his body, he, the said James J. Redmond, obtained entire control over him, and corruptly and wickedly took advantage of his relation and connection with him, and by reason of his influence, importunities and ascendancy over him, and of said Peter's mental imbecility and bodily infirmity, did defraud him of his property, and by his cunning and artifice did induce said Peter, on said 24th day of January, 1893, at Wallingford aforesaid, to make, execute and deliver to said Elizabeth T. Redmond a warranty deed of said real estate; and neither of said defendants paid anything for the same, but the said Elizabeth T. Redmond holds it by said fraudulent deed." The complaint prayed for a reconveyance of the said property to the plaintiff, and for damages.

The cause was referred to a committee, whose report gives at some length the life and history of the plaintiff, his peculiarities, his weaknesses of body and mind, his associations with his own kindred and with the defendants. We have condensed it here into a summary. It is this:—

Peter Looby was born in Ireland, came to this country about forty-five years ago, and is now more than sixty years old. He has always been a man of weak mind, disinclined to manual labor, and incapable of attending to business except such as was simple and easy. He has become almost blind; totally blind in one eye and the sight of the other nearly gone. He is a widower, childless, with no kindred in this country save two sisters and some nephews and nieces. His relatives had quarreled with him. They had had a lawsuit which resulted unfavorably to him. At that time there was a good deal of friction and irritation existing between

them, but this had subsided, and friendly feelings were so far restored that one of his sisters was a tenant in one of his houses. His wife died in 1883, and since that time he has substantially given up labor, has ceased to keep house, but boards. He was possessed of some property consisting of houses suitable for renting, and these he rented. In 1890 he was dangerously sick with pneumonia for several months. Since the death of his wife he had fallen behind in his financial matters, and he began to apply to Redmond for aid; though it did not appear exactly when. At first Redmond assisted him in collecting rents when a tenant got behind and he did not know what to do; and on such request Redmond would see the tenant and take care of the matter. The plaintiff has undertaken other business matters, moved one of his houses and erected a block, with stores on the lower floor and tenements over it; and obtained the money for doing this work by notes and mortgages to savings banks, and to others. All these matters were done upon the advice and with the assistance of Redmond; and the property has been increased in value. During all this time nothing has been lost. Redmond has paid over all the rents he has collected and accounted for all the money he has received. During all this time, up to the time the said deed was given, Redmond had received nothing for his services, nor did he render any bill for them. Occasionally he had asked Looby what he was going to get for his services, but it did not appear that anything further was said with reference to compensating Redmond.

The report from these facts finds that Looby had come to have great confidence in Redmond and to desire that Redmond, and not his own kindred, should have his property after his death; and that he proposed to Redmond to transfer the property to him so that he, Redmond, would have it after the death of Looby, if Redmond would pay to him twenty-five dollars per month, as long as he lived. Redmond did not at once accept this offer. He thought and said to Looby, that he could not afford to pay more than twenty dollars per

month.  Looby replied that he could not get along for less than twenty-five dollars per month.

What other negotiations were had, if any, does not appear; but at Redmond's request that the property, if conveyed at all, should be deeded to his wife instead of to himself, Looby did convey it to her by a warranty deed on the 24th day of January, 1893.  He deeded it to her because Mr. Redmond requested it to be so done.  The consideration of this deed was the oral promise of Mr. and Mrs. Redmond to take care of the property, pay the interest on the mortgages and the other charges against it, and also pay the $25.00 per month to Looby so long as Looby should live; and it was also expected and intended that they should pay all his indebtedness.

At the date of the deed the property ought "to have been worth $15,000, although such value has been greatly depreciated by the industrial depression which has prevailed since that time."  It is mortgaged to the amount of $8,100 and is subject to fixed annual charges amounting to $624.50.  It now brings in $57.00 monthly.  In good times it ought to bring $1,000 annually.

The principal inducement and motive in the mind of Looby to make the deed, was that Redmond should have the property at his death; it being supposed and expected that Redmond would continue to take charge of it as he had been doing for a few years previously.  In the conversation that led up to the giving of the deed, Looby consulted no outsider and took and received no independent advice concerning the transaction.  Looby had and still has knowledge of what his property consisted, had and has his own ideas of its value and knew the amount of the rents and the net income of the property at the time of the transfer; knew who would be his heirs at his death, but preferred and intended and still prefers that his property should not go to his heirs at his death, but to the Redmonds, according to the deed.  He did not thoroughly understand the effect and scope of the deed which he gave; but thought and continued to think that the property was subject to his control and ownership, if he ever should require such control and ownership.

Neither Redmond nor his wife ever solicited, urged, or persuaded Looby into giving the deed; nor did it appear that they suggested or advised him to take independent advice in respect to giving the deed. But if it had not been for the confidential relations between Looby and Redmond, and the confidence of Looby in Redmond, the deed would never have been made.

Looby attended the hearing before the committee and was a witness in favor of the defendants. He desired that the deed should not be set aside or disturbed. Such was and still is his confidence in Redmond, that he believed and still believes that he will somehow be properly taken care of by the Redmonds during his life; and his ordinary habits and wants are very simple.

Since the giving of the deed there has been some but not a total difference in the course of affairs between Looby and Redmond. Looby still continues to collect some of the easy rents which he had been before accustomed to collect, and he applies directly to his own use the sum of money so collected. The payments by Redmond to Looby have not been on any regular basis of a fixed sum per month, but irregularly as it might happen that Looby would want a few dollars.

The report finds that the deed was an improvident one, disadvantageous to Looby and advantageous to the Redmonds; and especially improvident in that it made no provision for the contingencies which might require more for Looby for his support.

William Looby, Jr., was appointed conservator of the plaintiff, by the Court of Probate of Wallingford, on the first day of November, 1893. An appeal from that action is now pending in the Superior Court in New Haven County.

The Superior Court made a decree requiring the defendants to reconvey to the plaintiff the property mentioned in said deed, on the ground, as appears by the memorandum of decision, that a fiduciary relation existed between Redmond and the plaintiff, and that the deed was voidable and should be set aside at his option.

The report of the committee is significant, when read in connection with the averments in the complaint, in that nothing is found tending to show any actual fraud or any undue influence, on the part of the defendants. It shows that Mr. Redmond has given advice and has rendered assistance to Looby from time to time for several years; that he did this at the times when Looby's own kindred were engaged in a lawsuit with him, and at a time when he was dangerously sick with a long continued illness; that he has done this with such skill, intelligence and fidelity, that not a dollar has been lost, that the property of Looby has become increased in value, and that it has all been done from the first, without pay or the promise of pay. The report also finds that neither of the defendants ever solicited, urged, or persuaded, Looby into giving the deed. It is easy to believe, as the report finds, that Looby had come to have great confidence in Mr. Redmond, and to desire that his property should go to Redmond instead of going to his own kindred, and that but for the confidence thus inspired the deed would never have been made. And although the report shows that Looby was weak minded and inexperienced, it fails to show, as it seems to us, that this is a case in which an influence has been acquired and abused, or in which a confidence has been reposed and betrayed.

It is an undoubted equitable rule that any one acting in a trust, or in any fiduciary relation, shall not be permitted to make use of that relation to benefit his own personal interest. The reason of this rule is that the fiduciary owes a duty to the *cestui que trust*, to protect him in respect to the estate which is the subject of the trust. It may be a duty imposed by law, or one undertaken by contract; and equity will not allow a fiduciary to put his personal interest into conflict with his duty to his beneficiary. The application of this rule to the recognized relations of trust is easy, as to a trustee, an attorney, a guardian, a partner, or other like relation. The test of the relation is the existence of the duty. If there is no duty resting on the supposed fiduciary to protect the beneficiary, then this trust relation does not exist. However

great the confidence may be which one person has in another, if there is no duty upon that other to protect the former, then there is no fiduciary relation between them. The case of *Hemingway* v. *Coleman*, 49 Conn., 390, illustrates this feature. The confidence which the plaintiff's intestate (Mrs. Augur) had in the defendant was unlimited, and he knew that she had that confidence in him when he took the deed which was the subject of the inquiry in that case. But as it appeared that he was under no duty to her, the deed was allowed to stand, although the transaction was very advantageous to him and disadvantageous to her. Other cases to the same general effect are : *Harrison* v. *Guest*, 8 H. L. Cases, 481, 6 De G. M. &. G., 424 ; *Dunn* v. *Chambers*, 4 Barb., 376 ; *Pratt* v. *Thornton*, 28 Me., 355 ; *Farnam* v. *Brooks*, 9 Pick., 212 ; *Long* v. *Long*, 9 Md., 348 ; *Cain* v. *Warford*, 33 id., 23 ; *Smith* v. *Elliott*, 1 Pat. & H. (Va.), 307 ; *White-horn* v. *Hines*, 1 Munf. (Va.), 557 ; *Rippy* v. *Gant*, 4 Ired. Eq. (N. Car.), 443 ; *Dennett* v. *Dennett*, 44 N. H., 531 ; *Nace* v. *Boyer*, 30 Pa. St., 99, 100 ; *Sturtevant* v. *Sturtevant*, 116 Ill., 340 ; *Darnell* v. *Rowland*, 30 Ind., 342.

The test in the present case is to be applied to the relations between Looby and Redmond as they existed prior to the 24th day of January, 1893. It would border upon sophistry to use the deed given on that day, to prove a trust relation between the parties to it, and then to claim that because of the trust relation the deed should be set aside. And prior to the date of the deed, we are not able to find from the committee's report that any relation existed between these men, such that the duty of a trustee rested on Redmond. There was no contract between them, nor was there any relation to which the law affixes that duty. Redmond was no more than a friend ; a friend, to be sure, whom Looby trusted and from whom Looby often asked advice ; but who was under no duty to give advice, and certainly under no duty to protect Looby, or Looby's property interests.

It is argued that Redmond was the agent of Looby. If so, he was the agent to collect some payments of rent. "When a tenant got behind in rent and Looby did not know what

to do, he went to Redmond for advice, and Redmond would see the tenant and take care of the matter." And when such matter was attended to, the agency ceased. To be sure, while Looby was sick with pneumonia Redmond took charge of the renting and collecting the rents of all of Looby's houses; but these rents, and the rents he has collected since, he has paid over to Looby. And it is true that since Looby's sickness Redmond has had charge to some extent of the stores. These have not been occupied. But granting that Redmond was in a sense the agent of Looby to rent these tenements and to collect the rents, it was a gratuitous and temporary agency— one that Redmond was under no obligation to continue a single day, and for which he had sought no compensation. To hold that such an agency made Redmond a trustee of the real estate from which the rents issued—and when no fraud or undue influence is shown—would be making an application of the rule of imputed trusts to a case not fairly within it, or at least carrying it further than the circumstances of the case justify.

There are other parts of this case which appear not to have been noticed by the Superior Court, and which it seems to us ought to be considered, and to have due weight in determining the judgment. Contracts by trustees with their beneficiaries are not void. They are voidable only at the instance of the beneficiary, and then only so far as he demands, or so far as his interests require. It is no part of the duty of a court of equity to punish a trustee. Its duty is to protect the *cestui que trust.* 1 Perry on Trusts, § 196; *Davoue* v. *Fanning,* 2 John. Ch., 252; *Green* v. *Winter,* 1 id., 26, 40; *Pratt* v. *Thornton,* 28 Me., 355; *Ames* v. *Downing,* 1 Bradf. Sur. (N. Y.), 321. Courts of equity possess a high advantage over courts of law, in that as a general rule they pay attention to the conditions of a cause as they are found to be at the close of the trial, and adapt their relief to those conditions. *Haffey* v. *Lynch,* 143 N. Y., 241. The committee reports that Peter Looby constantly attended the hearings before him, and then stated that he desired the deed should

not be set aside or disturbed. So far as it can consistently be done, we think the wish of Looby should be respected.

The report of the committee, while it shows that Looby was a man of weak mind, does not show that he was incapable of making contracts. On the contrary it shows that he could make contracts. He was making contracts constantly, giving notes to savings banks and mortgages to secure them. He could pay debts. He could receipt for rents. He could contract for his further support. He could make a will. It is perfectly clear that he intended to convey his property to the Redmonds; that if he acted without independent advice at first, he still continues of the same mind after he has been fully informed by the incidents of the trial. At the same time it is clear from the report that Looby intended to make the conveyance—and he supposes he has done so—in such a way that it is obligatory on the Redmonds to pay him twenty-five dollars a month as long as he lives, pay all his debts, and allow him such further advantages of the property as his needs may require. It would also appear from the conduct of the Redmonds since the deed was given, that they accepted it upon the same understanding. Having taken the deed with knowledge of Looby's intention in giving it, they are chargeable in equity with the obligation to carry out his intent. Their conduct since the deed was given seems to indicate that they intend to do so. That their part of the entire contract rested in parol has not, apparently, been to them an infirmity. This is a contract which Looby could make, and which would not be disadvantageous to him. In many respects it would be highly advantageous. And the true effect of it is that the Redmonds hold the property in trust for Looby, to make the payments which he expects. Lewin on Trusts, *56; *Chamberlain* v. *Thompson*, 10 Conn., 243. Upon a careful consideration of all the facts and circumstances set forth in the case, we think this is the real contract these parties have made. The duty, then, of the court, is not to set aside the contract, but to enforce it. And if the judgment is so framed that the real contract may be enforced, complete justice will be done to all the parties, and

it will be that result which the plaintiff desires to have accomplished. The simplest way to do this, perhaps the only way, is by requiring the Redmonds to hold the real estate in trust to pay to, or for, Looby, the sums which the contract makes it obligatory on them to pay. We think the Superior Court erred in requiring the Redmonds to reconvey absolutely, and that the judgment in this respect should be varied for one that is conditional.

A judgment should be entered requiring Mrs. Redmond to execute, within such time as the court may fix, a declaration of trust of even date with the deed—and if necessary her husband should be required to execute it with her—that she holds the real estate conveyed to her by the said deed of January 24th, 1893, in trust, for Peter Looby the grantor therein, during his lifetime, to pay all his then existing indebtedness, to pay him twenty-five dollars a month each and every month so long as he shall live, and to provide for him from the rents of said estate, or from the estate itself, such further sums as his needs may require, and at his death to hold the same free from said trust to her own use, according to the deed; and that upon the execution of such a declaration of trust to the approval of the court, and it being duly recorded, this complaint shall be dismissed; but that on failure to execute such declaration, then the judgment already rendered should be renewed and enforced.

We have discussed this case just as though the conservator was a party to it.

There is error in the relief granted, and the judgment should be varied as herein indicated.

In this opinion the other judges concurred.