THE STATE OF CONNECTICUT vs. ANNIE J. CULHANE ET AL.

Third Judicial District, New Haven, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE; Js.

It is the duty of an administrator to apply to the Court of Probate within a reasonable time after the settlement of his account for an order of distribution, and in case of his failure to do so suit may be brought upon his bond. This remedy was not affected by the enactment of General Statutes, § 394, requiring the Court of Probate, in the settlement of estates, to ascertain the heirs and distributees, and, under certain conditions, to order the delivery of possession or payment accordingly. These statutory provisions are merely declaratory of the pre-existing law.

The equitable doctrine which throws upon one in a position of trust the burden of proving the entire fairness of transactions between himself and the beneficiary is applicable to dealings between administrators and heirs or distributees.

A transaction between the administratrix of an estate and the sole heir reviewed, and the conveyance to her of a part of his interest in the estate *held* to be voidable by him in a suit against her upon the probate bond.

Argued January 16th—decided March 8th, 1906.

ACTION upon a probate bond, brought to and tried by the Superior Court in Fairfield County, *Shumway, J.;* facts found and judgment rendered for the plaintiff for $8,490 damages, and appeal by the defendants. *No error.*

*Samuel Tweedy,* for the appellants (defendants).

*Robert E. DeForest* and *Robert G. DeForest,* for the appellee (plaintiff).

HALL, J. The defendants are respectively the principal and surety upon a probate bond for the faithful discharge, by the defendant Annie J. Culhane, of her duties as administratrix of the estate of Hugh Campbell, late of Danbury.

The complaint alleges that the suit is brought for the benefit of Henry H. Campbell, the son and sole heir of said Hugh Campbell, and that the acts of neglect of said admin-

istratrix, which have injured the rights of said Henry H. Campbell, were her failure to procure an order from the Court of Probate commanding her to distribute and pay over to said heir moneys and securities to the amount of $14,781.84, remaining in her hands after payment of all claims of creditors and the expenses of settling the estate; and her failure to pay over or distribute said assets to said heir, except the sum of $5,000.

It appears by the finding, that at the time of the death of said Hugh Campbell on the 30th of October, 1898, he and his son Henry H. Campbell were boarding with the defendant Annie J. Culhane, who was a niece of the intestate, and who, prior to her marriage, had lived many years in his family and had had the care of said Henry H. Campbell, who was about ten years her junior, and that said Henry H. Campbell continued to board with her, after his father's death, and until his own marriage in September, 1899.

On the 3d of November, 1898, upon the application of said Henry H. Campbell, the defendant Annie J. Culhane was appointed administratrix of the estate of said Hugh Campbell.

The estate of the intestate consisted wholly of personal property, made up of money on deposit in savings-banks to the amount of $2,681.41, and express and railroad stocks, valued in the inventory filed December 31st, 1898, at $10,847.50, among which were twenty shares of New York, New Haven and Hartford Railroad stock, ten shares of Adams Express Company, and eleven shares of Chicago, Rock Island and Pacific Railroad.

The administratrix paid all the claims against the estate, and on May 4th, 1899, filed her final account as follows: —

" Annie J. Culhane, Admx., in account with said estate.

Dr.

" To amount of inventory of personal estate as rendered . . . . . . $13,959.59
" To interest received . . . . . . . . . 65.00

$14,024.59

Cr.

"By (various items of expenses paid)        $286.25

Due estate . . . . . .  $13,738.34."

The finding states that there has been no order of distribution of any part of the estate, and no application for such an order nor any request that the administratrix apply for such an order.

The administratrix testified at the trial that the deceased Hugh Campbell, when about to depart for Ireland the year before his death, told her that he did not want to make a will, but that if anything happened to him he wanted his son to have the money in the banks, and one half of the stocks, and wanted her to have the rest of the estate.

Shortly after administration had been granted to said Annie J. Culhane, she informed Henry H. Campbell what she understood his father's wishes were regarding the disposition of said money and stocks, and he then consented to transfer to her the New York, New Haven and Hartford Railroad, the Adams Express Company, and the Chicago, Rock Island and Pacific Railroad stock, and thereafter, on the 19th of November, 1898, they went together to the judge of probate and informed him what they wanted done, and he sent them to an attorney, who prepared separate assignments to said Annie J. Culhane of Henry H. Campbell's interest, as sole heir at law, of Hugh Campbell in said three named stocks, for the expressed consideration of $1 and other valuable considerations, which were then and there executed and acknowledged by said Henry H. Campbell and delivered to Annie J. Culhane. At the same time and place said Henry H. Campbell made and executed his will, by which he gave all his estate to said Annie J. Culhane and her two brothers.

Before the administratrix filed her final account, transfers of the certificates of said stocks were made to Annie J. Culhane with the approval of said Henry H. Campbell, and a little later, in accordance with transfers made of all the certificates of stocks belonging to the estate, new certificates

of stock were issued, the certificates of the shares of express and railroad stocks, his interest in which Henry H. Campbell had transferred to Annie J. Culhane by the instruments executed November 19th, 1898, being issued to her, and the certificates of the other stocks which had belonged to the estate, being issued to Henry H. Campbell.

The administratrix, shortly after the expiration of the six months limited for the presentation of claims, drew all the money belonging to the estate from the savings-banks in which it was deposited, and paid it to Henry H. Campbell.

The certificates of stock so issued to Annie J. Culhane remained in her name until she sold them for $6,550 and deposited the money in savings-banks where it still remains.

The finding states that "in the manner aforesaid, and not otherwise, the said Annie J. Culhane has disposed of the estate of said Hugh Campbell, and except the three certificates above mentioned, which were transferred to her, she has delivered the entire estate which came into her hands to Henry Hugh Campbell."

Three years after said stocks were so transferred to Annie J. Culhane, said Henry H. Campbell, through his attorneys, for the first time made a claim to them, without having before expressed any dissatisfaction with the "terms of settlement of the estate by her."

Regarding the character of the transaction by which Annie J. Culhane claims to have acquired a valid title to the stocks in question, the finding further states that the assignments to her of November 19th, 1898, were without consideration; that Henry H. Campbell was a young man below the average intelligence, and without business experience; that he had always been supported by his father, prior to the latter's death; that he had no idea of the value of money, was a spendthrift; that he made the assignments to Annie J. Culhane of his interest in these stocks under the belief that if he did so no effort would be made to have a conservator appointed over him; and made them without

any appreciation of the effect of such transfers upon his interest in his father's estate.

Upon these facts the trial court rendered judgment for the plaintiff for $8,490.91, upon the ground that the defendant had not accounted for, but had appropriated to her own use, the $60 dividends received by her upon said stocks, and the sum of $6,575 received by her upon the sale of the stocks, charging her interest upon the amount so received from the date of said sale of the stocks, and crediting her with the amount of the inheritance tax of $102.55 paid by her.

The claim is made by the defendants that this action cannot be maintained, because no order of the Court of Probate was made for the delivery to Henry H. Campbell of the property or funds in the hands of the administratrix. The law giving to an heir or legatee a remedy by action upon the probate bond, upon failure of an administrator to pay over or distribute funds or property in his hands to the parties entitled to it, was not changed by the provisions of § 394 of the General Statutes, enacted in 1885, requiring the Court of Probate in the settlement of certain estates to ascertain the heirs and distributees, and under certain conditions to order the administrator to deliver possession of, or to pay over, the estate in his hands, to a single heir, or to the heirs. These provisions were only declaratory of an existing law. *Mack's Appeal*, 71 Conn. 122, 128. The law was the same in 1877 when *Sanford* v. *Thorp*, 45 Conn. 241, was decided, which was an action upon a probate bond for damages resulting from the neglect of an executor to pay or distribute, to the parties entitled to it, the balance remaining in his hands upon the settlement of his final account with the Court of Probate. It was said in that case that " it was the duty of the defendant, as executor, to apply to the Court of Probate, within a reasonable time after the settlement of his account, for an order of distribution of the property remaining in his hands as executor, and to pay or distribute the same to the parties entitled under the will."

In this case it appears by the final account of the administratrix, which her counsel say in their brief was approved

and accepted by the Court of Probate, that there remained in her hands, to be paid to the heirs of Hugh Campbell, a balance greater than the amount of the judgment rendered; and from the other facts in the case it appears that after the payment of all claims and the settlement of her administration accounts, there remained in her hands the Adams Express stock, the New York, New Haven and Hartford Railroad stock, and the Chicago, Rock Island and Pacific Railroad stock, which Henry H. Campbell was, and the avails of the sale of which he still is, entitled to have delivered to him, and for the delivery of which stocks the administratrix should have procured the necessary orders from the Court of Probate, unless it can be held upon the facts found, either that the administratrix by the transfer of November 19th, 1898, acquired Henry H. Campbell's interest in these stocks, or that these stocks have in effect been delivered by the administratrix to Henry H. Campbell.

The transaction between the heir and administratrix cannot be considered as amounting to a delivery to him of these stocks by the administratrix after the filing of her account, and a transfer of them to her by Henry H. Campbell after the settlement of the estate. The facts do not show any such transaction, nor is it claimed that the parties had any such plan in mind. It does not appear that Henry H. Campbell ever had the certificates of these stocks in his possession or control. The only act of Henry H. Campbell by which Annie J. Culhane acquired any title to the stocks in question, was the making of the transfers of November 19th, 1898, when the certificates were in the possession of the administratrix. The transfers of the certificates themselves, of all the stocks, since they stood in the name of the intestate Hugh Campbell, were presumably made by the administratrix herself: those of the stocks in question to herself as an individual, and those of the remaining stocks to Henry H. Campbell.

The question decisive of the case is, then, whether, upon the facts found, the transfers of November 19th, 1898, by an heir to an administratrix, of an interest of the former in a

part of the estate held by the latter in said capacity, is voidable in a suit for the benefit of such heir. In *Bronson* v. *Thompson*, 77 Conn. 214, 218, we said: "A purchase by a trustee from the *cestui que trust* of his interest in the trust estate is not void. If there was any want of equity towards him in the transaction, the *cestui que trust* can avoid the sale by an equitable proceeding." In *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 137, it was said: "It is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . . The rule applies alike to agents, partners, guardians, executors and administrators." In *Nichols* v. *McCarthy*, 53 Conn. 299, 316, this court, quoting the language of Pomeroy's Equity Jurisprudence (3d Ed.), Vol. 2, § 958, said: "A purchase by a trustee from his *cestui que trust*, even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary; it is at least *prima facie* voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance, voidable. It is possible for the trustee to overcome the presumption of invalidity." And again (p. 317), quoting from Perry on Trusts (5th Ed.), Vol. 1, § 194: "If parties within the prohibited relations or conditions contract between themselves, courts of equity will avoid the contract altogether, without proof, or they will throw upon the party standing in this position of trust, confidence, and influence, the burden of proving the entire fairness of the transaction." The equitable doctrine thus stated applies with equal strictness to executors and administrators. 2 Pomeroy's Eq. Jurisp. (3d Ed.) § 963,

The transfers of November 19th, 1898, were those of a *cestui que trust* to a trustee, of a part of the trust estate and from which the latter was to receive a large benefit. The absence of any consideration for the transfers of property of so great value, the fact that the *cestui que trust* was a person of below average intelligence, that he made the transfers under the belief that he would thereby prevent the appointment of a conservator over him, and without any appreciation of the effect of such transfers upon his interest in his father's estate, instead of showing that the transaction was one of entire fairness toward Henry H. Campbell, indicate an attempt on the part of the administratrix to overreach him, and to obtain, through his weakness and her position and influence, an undue and inequitable advantage over him.

As the admission of the evidence, the striking out of which is complained of, could not have changed the judgment to be rendered, we need not consider whether it should have been stricken out.

Dividends received by the administratrix on the stocks from the time she appropriated them as her own, and interest on the avails of the sale of the stocks from the time the stocks were sold by her, were properly charged in the judgment rendered. *Rowland* v. *Isaacs*, 15 Conn. 115, 123.

There is no error.

In this opinion the other judges concurred.