FRANCIS P. SISK, ADMINISTRATOR, vs. THE JORDAN COMPANY ET AL. (WILLIAM J. JORDAN vs. THE JORDAN COMPANY ET AL.).

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

A director of a corporation occupies a position of trust which he will not be permitted to use for his own personal profit. While his contracts and dealings with the corporation are not void, they are voidable unless they are open, made in good faith, fair, and fully understood. The least appearance of unfairness in the transaction—irrespective of good intention and lack of actual fraud—will suffice to set it aside in a court of equity. Furthermore, the burden of affirmatively proving the existence of these requisites in a given case, rests upon the director himself and not upon the corporation or its representative.

In the present case the plaintiff, a director, furnished his company with financial assistance by discounting its customers' notes, by indorsing its renewal notes, and by purchasing some of the company's real estate, in return for which he received or was credited with commissions and bonuses, and also made substantial profits on the real estate so taken over. Later the company went into the hands of a receiver and the plaintiff presented his account which, after a hearing and report by the committee, was allowed to the amount of $22,892. Upon an appeal to this court by the receiver it was held:—

1. That inasmuch as it appeared from the finding of the committee that no evidence was presented as to whether or not the amounts charged were reasonable for the assistance extended by the plaintiff, and none as to the reasonableness or otherwise of the prices paid by the plaintiff for the real estate, the plaintiff had not sustained the burden of proof placed upon him by reason of his relation as a director of the corporation, in the absence of which his claim could not properly be allowed. (One judge dissenting.)

2. That the facts as found did not justify the conclusion reached by the trial court, that the plaintiff dealt at arm's length with the company. (One judge dissenting.)

3. That the fact that the company realized a benefit from the plaintiff's dealings with it was not the decisive test: it must affirmatively appear that the consideration received by the plaintiff was fair and equitable.

4. That no burden rested upon the receiver to show actual fraud, in order to attack or avoid the transactions in question.
5. That the finding as to the real estate profits accruing to the plaintiff, based solely upon the values existing at the time of the hearing, did not furnish the data necessary for determining the character of these dealings.
6. That there was no basis in the committee's report for the conclusion, reached by the trial court as an additional basis for its decision, that the corporation had ratified these transactions.
7. That the cause must be referred back to the committee for a further hearing, in the light of the rules of law above stated.

Argued November 6th, 1919—decided March 5th, 1920.

APPLICATION in receivership proceedings by an alleged creditor praying for the allowance of his claim, brought to the Superior Court in New Haven County and referred to a committee who found and reported the facts; the court (*Keeler, J.*) recommitted the report for a further hearing and upon the return of the supplemental report judgment was rendered (*Warner, J.*) in favor of the claimant for $21,442, from which the receiver of the Jordan Company appealed. *Error, judgment set aside and cause remanded.*

The committee reported upon the claim as follows: The Jordan Company was a Connecticut corporation; its business had increased to such an extent that it was in need of funds on account of insufficient capital. Not being able to obtain sufficient funds through its banks, it sought financial assistance from the claimant Sisk. Sisk was elected a director of the Jordan Company on January 25th, 1915, and the financial transactions between Sisk and the Company after he became director were as follows: (a) Customers of the Jordan Company gave to it their notes in the usual course of business. While he was a director the company paid or credited Sisk on his account with $3,226.60 for discounting said notes before maturity to the amount of $33,233.92. In many of these cases Sisk was credited

with a discount, or allowed interest in addition to the said bonus or commission. (b) Notes of the customers of the Jordan Company were delivered to Sisk before maturity and discounted by him, amounting to $36,-867.33, for which he was credited or allowed commissions of $2,410.34, and Sisk rediscounted these notes at his own bank. (c) Sisk lent to the company his credit as indorser to renewals of three notes of $15,000 each, and received therefor $3,500 as commissions. (d) Sisk, while a director, agreed with the Jordan Company that customers' notes taken by him to the amount of $2,300 should be taken back by it, and he was credited with a bonus or commission for such service of $200. (e) After Sisk became a director, the Jordan Company sold to him: (1) a house on Orange Street for $9,000, upon his agreement to resell within six months for $9,500. Sisk stills owns this property, which is now worth $10,500. (2) The equity in a Dixwell Avenue piece, on November 18th, 1916, for $2,000, and allowed him a commission of $450 for purchasing the same. On January 4th, 1917, Sisk sold this equity at a profit to himself of $1,450 over and above the commission of $450. (3) On April 19th, 1915, its interest in three pieces on Farren Avenue for $1,500, and on September 7th, 1917, Sisk sold his said interest at a profit over what he had paid of $1,683.99. (4) On April 19th, 1915, its interest in a piece of land on Townsend Avenue for $1,250. In April, 1918, Sisk sold his interest in a part of this piece for $800, and still has said interest in the balance, which, at the date of hearing, was worth $1,750; so that Sisk's profit at this time was $1,050 on this transaction. (5) On January 15th, 1917, its interest in a piece of land in Edgewood Park for $400. At the time of hearing Sisk still owned said interest which was worth $500 more than when he purchased it. The total profits, actual and estimated, on the fore-

going real estate transactions, were $6,183.99. There was no evidence before the committee to show that the said prices paid by Sisk were unfair or inequitable. (f) The Jordan Company gave to Sisk, as security for a check of $1,290 given him, an automobile. The check was never paid and was credited in the claim allowed Sisk, and Sisk sold the automobile for $750, and he was debited with this.

From time to time Sisk and the Jordan Company effected an adjustment of their transactions. And on February 19th, 1917, at one of the adjustments, Sisk delivered his check for $900 to the Jordan Company; across one end of the check was written "In settlement of account to date." This check was duly indorsed and cashed by the Company by its treasurer.

On said February 19th, Sisk owed the Jordan Company $10,134.29 on their running account. At the time of said settlement a check for $600 given Sisk by the Company and never paid, was omitted from consideration, and subsequently Sisk included this $600 as part of his claim. The committee finds that no settlement of the running account between Sisk and the Company was made at this time.

Sisk believed the Jordan Company to be solvent while he was a director.

In all cases the amount of the bonuses and commissions paid or credited to Sisk was determined by Jordan, the treasurer and president of the Company.

The banks at which the Jordan Company transacted its business charged only the regular discount of six per cent, and received no bonuses or commissions. Sisk was not acting for the Jordan Company in these transactions.

There was no evidence before the committee as to whether or not the amounts charged were reasonable compensation for the financial assistance extended by Sisk to the Company.

One of the purposes for which the Company was organized was to engage in real-estate business.

The receiver claimed Sisk occupied a fiduciary position toward the Jordan Company and could not make profit out of his dealings with it during his term of service as a director. The receiver claimed that the profits on the real-estate transactions should be set off against the claim of Sisk.

The committee found that Sisk was under no duty to the Jordan Company to account for profits from these real-estate transactions. The committee recommended that the claim of Sisk for $22,892.85 be allowed.

The receiver remonstrated against the acceptance of the amended report because of certain rulings. To this remonstrance Sisk demurred.

The opinion states the issues raised by the demurrer to the remonstrance, so far as they are pressed on the appeal, and there is no occasion to give their detail.

*Robert C. Stoddard* and *Frederick H. Wiggin*, for the appellant (defendant receiver).

*Walter J. Walsh*, for the appellee (plaintiff).

WHEELER, J. The claimant Sisk, while a director of the Jordan Company, had numerous and large financial dealings with it. In the running account between the Company and Sisk during this period, he was credited with cash bonuses or commissions as compensation for his indorsement of notes of the Company, for his checks given in exchange for the Company's checks, and for certain real-estate transactions. The Company also sold to Sisk its customers' notes before maturity, and credited Sisk with the difference between the sale price and the face of the notes as a

commission or bonus. The committee found that "there was no evidence before it as to whether or not the amounts charged were reasonable compensation for the financial assistance extended by the claimant Sisk."

In its memorandum overruling certain grounds of demurrer to the remonstrance, the trial court held that the commissions, bonuses and discounts received by Sisk were in effect and law equivalent to loans of money on a present valuable consideration; and that the facts as found showed "that Sisk dealt at arm's length with the Company, and that his dealings were for its benefit in continuing the business, and that without his assistance the Company would have been in a very precarious condition." Upon the facts found, the court held these transactions could not be impeached except for actual fraud; and that the dealings of Sisk and the Jordan Company being open and free from blame, must be held valid. In addition, the court held that as to the stockholders and corporation, the facts found showed acquiescence in and ratification of the dealings with Sisk; and that the creditors, as represented by the receiver, had no greater right than the stockholders to set aside these transactions, unless they were proved fraudulent. Further, the court held that the receiver had the burden of proving fraud as to his counterclaim, and that this he neither had assumed nor sustained so far as appeared from the report.

A director is a fiduciary of the corporation and of its stockholders. He may not use that relation for his own profit. His contracts and dealings with his corporation are not void, but are voidable unless the transaction be open, in good faith, fair, and fully understood. Equity will scrutinize the dealing between the fiduciary and his *cestui que trust* with jealous care, and

it will set aside the transaction with the utmost freedom upon the least appearance of unfairness. Neither good intention nor lack of fraud will avail to sustain the transaction. Our own decisions establish these rules in terms at once clear and decisive. *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 23 Atl. 708; *Nichols* v. *McCarthy*, 53 Conn. 318, 23 Atl. 93; *Looby* v. *Redmond*, 66 Conn. 444, 34 Atl. 102. And our rule is the rule of many other jurisdictions. *Hallam* v. *Indianola Hotel Co.*, 56 Iowa, 178, 179, 9 N. W. 111; *Proctor* v. *Farrar*, 213 S. W. Rep. 469 (Mo.); *Cowell* v. *McMillin*, 100 C. C. A. 443, 457, 177 Fed. Rep. 25, 39.

But our decisions, and those of most of our States, go further and place upon the fiduciary, whenever the transaction with his *cestui que trust* is before a court, the burden of affirmatively showing that the transaction was entirely fair, made in good faith, for an adequate consideration and upon a full understanding. This burden arises, we have said, out of the trust relation. It is a rule of fairness. A fiduciary claiming a benefit from his dealing with his *cestui que trust*, should be made to prove that he dealt in fairness and under the conditions prescribed by law. The full knowledge of the transaction is within his possession; he can and he must assume the burden of its proof. This rule we applied in a transaction between a trustee and a *cestui que trust*. *Nichols* v. *McCarthy*, 53 Conn. 299, 319, 23 Atl. 93. And likewise in the case of a transfer by an heir to the administrator. *State* v. *Culhane*, 78 Conn. 622, 629, 63 Atl. 636.

Many cases in other jurisdictions adopt this rule and apply it to the case of directors. "Whenever it appears that a director has been dealing with his corporation, the burden is at once upon him to show that his dealings have been fair and honest; in other words, that the corporation has not suffered as the result

of his acts." *First Nat. Bank of Hilger* v. *Lang,* 55
Mont. 146, 156, 174 Pac. 597, 600; *Hanson Sheep Co.*
v. *Farmers & Traders State Bank,* 53 Mont. 324, 335,
163 Pac. 1151, 1154; *Booth* v. *Land Filling & Imp. Co.,*
68 N. J. Eq. 536, 543, 59 Atl. 767; *Ross* v. *Quinnesec
Iron Mining Co.,* 142 C. C. A. 33, 39, 227 Fed. Rep.
337, 343; *Drennen* v. *Southern States Fire Ins. Co.,* 164
C. C. A. 616, 630, 252 Fed. Rep. 776, 790; *Pitman* v.
*Elmore,* 93 Mo. App. 592, 597, 67 S. W. 946; *Woodroof*
v. *Howes,* 88 Cal. 184, 187, 26 Pac. 111; *Sage* v. *Culver,*
147 N. Y. 241, 247, 41 N. E. 513; 10 Cyc. 808, 813.

The ruling of the trial court was directly contrary
to this almost universal rule of the burden of proof.
The committee found that "there was no evidence
before the committee as to whether or not the amounts
charged were reasonable compensation for the financial
assistance extended by the claimant Sisk," and it
further found that "there was no evidence before the
committee to show that the prices paid by Sisk to the
Jordan Company for its interest in the foregoing
pieces of real estate were unfair or inequitable."
These findings indicate that Sisk has not sustained the
burden of proof placed upon him by reason of his
relation as director to the corporation, without which
proof his claim cannot be allowed.

In his dealing with the corporation, both in his
loans of money and credit, and in his purchases, the
individual interest of Sisk and his fiduciary interest
as director met, hence the burden was upon him to
show that each of the transactions was fair and equi-
table.  If Sisk shows that his services were at the time
valuable to the corporation and shows what he fairly
earned, in the absence of other circumstances of in-
equity, his claim, to that extent, should be allowed,
since he will have sustained the burden of showing
the fairness of his dealing.

*Judge Keeler*, in sustaining the demurrer to the original remonstrance, interpreted the facts as showing that Sisk dealt at arm's length with the Company. The facts found do not lead to this conclusion. The trial judge emphasizes the benefit of Sisk's dealing to the corporation, but this is not the decisive test. The benefit rendered may have been undoubted, yet the consideration claimed for the service may have been unfair, and even unconscionable. The vital fact is, that the dealing appears affirmatively to have been fair. The trial court held that these transactions could not be attacked except for actual fraud; the authorities cited show the reverse. The receiver is not in the position of the ordinary plaintiff claiming a recovery for fraud. There was no burden on him to prove the fraud.

That Sisk, while a director, made a profit through transactions with his corporation, in the absence of proof by him of the fairness of the transactions, gave the receiver the right of avoiding them unless, indeed, the contracts on their face show their fairness.

Upon the demurrer to the amended remonstrance, *Judge Warner* adhered to the earlier ruling of *Judge Keeler* upon the bonuses and commissions arising out of the dealings other than the real-estate transactions, and overruled the demurrer as to the profit upon the Dixwell Avenue real-estate transaction, and sustained it as to the other transactions. In his memorandum *Judge Warner* says: "While there can be no question that the law will equally protect a director or other officer of a corporation who in good faith purchases property from it in his individual capacity, as well as an outsider, yet when the consideration apparently is inadequate, suspicion will be cast upon the transaction, and the burden rests upon such director to show the purchase was made in good faith for fair value." This

accurately states the rule; but in its application to this and the other real-estate transactions, we think the learned judge failed to correctly apply it. Upon his purchase of the Dixwell Avenue land, Sisk received a commission of $450, and at the end of seven weeks he sold this at a profit of $1,450. The trial judge disallows the profit while allowing the commission. If Sisk made the profit unfairly, the receiver justly queries, why should he be paid $450 for doing it?

The committee finds that "there was no evidence before the committee as to whether or not the amounts charged were reasonable compensation for the financial assistance extended by the claimant Sisk." This finding is of no significance. The burden on Sisk compelled him to prove that the amounts he charged were reasonable and fair under the circumstances. The report of the committee does not show that these transactions were fair, nor give the facts from which this might be inferred. Until the value of the several pieces of real estate, at the time Sisk took title from the corporation, appears, no basis is at hand to determine what, if any, profit there was, and whether or not it was unreasonable or unfair. The finding of the profit to Sisk upon the values as of the time of the hearing, does not furnish the necessary basis for determining the character of these transactions.

As to the commissions, the trial court held, as an additional reason for its decision, that the corporation had ratified these transactions.

We do not so read the report of the committee. No one besides the president, treasurer and general manager of the corporation, and Sisk the director, participated in, or even knew of, these dealings. No one had the opportunity to question these transactions until the receiver took charge of the corporation. "Ratification," we said in *Mallory* v. *Mallory Wheeler Co.*, 61 Conn.

131, 132 (23 Atl. 708), "ordinarily requires some positive assertive act. In order that acquiescence alone should become a ratification the delay must be so long continued that it can be accounted for only on the theory that there has been some affirmative act. . . . The delay must have been unreasonable; the stock holders . . . must have had an opportunity to act, and to act with perfect freedom. . . . And have been fully advised of all the material facts" in the case. The report of the committee does not reveal a ratification of this character. Moreover, the financial situation of the corporation might have been such that however binding the ratification would have been upon the stockholders, it could not affect the creditors. Not until the receiver took charge would they in fact have been represented by one having knowledge.

There is error, the judgment is set aside and the Superior Court is directed to overrule the demurrer to the remonstrance and refer the report to the committee for further finding as to each of the transactions referred to in the report, in accordance with this opinion.

In this opinion BEACH, CASE and CURTIS, Js., concurred.

GAGER, J. (dissenting). The gist of the opinion is that because Sisk was a director of the Jordan Company, the burden of proof was upon him to establish the fairness of his dealing with the Company, regardless of whether he took part in the transaction in any degree as representing the Company. The mere fact that he was a director seems to be considered enough. The court further holds that it was his duty in the first instance to present the evidence of the fairness of the transactions. The court says: "That Sisk, while a director, made a profit through transactions with his

corporation, in the absence of proof by him of the fairness of the transactions, gave the receiver the right of avoiding them unless, indeed, the contracts on their face show their fairness."

I think that it is here that, upon the finding, the court is mistaken. The finding is explicit that the Jordan Company had exhausted its credit at its banks, was pressed for funds, and had to secure financial assistance from other sources; that the president and treasurer alone fixed and determined commissions; that Sisk was not acting for and in behalf of the Company in his transactions with the Company, and was under no duty to account to the Company. The transactions with Sisk were not the result of any votes of the directors, but were entered into in the ordinary course of business by the president and treasurer of the Company. There were no secret profits. Sisk continued after he was elected a director to furnish financial assistance, as he had done for twenty months before he became a director. Prior to the appointment of the receiver the reports of the treasurer showed, and Sisk believed, the Company was solvent. Sisk had nothing to do with the management of the corporation in the matters in which he was interested. He in no sense represented both parties in his transactions, but dealt purely in his individual capacity. These facts, affirmatively found, while they do not prevent the examination of these relations to see whether they were fair, place Sisk in the prima facie position of a stranger and throw the duty of attack upon the challenging party. Otherwise there is no efficacy in the rule that if a director establishes that he was acting as a stranger,—that is, takes himself out of the situation of representing both sides in a transaction—he prima facie takes himself out of the position which is at the basis of his special liability as trustee. In *Smith* v. *Skeary*, 47 Conn. 47, it

was said (p. 55): "It is true that in this case there is
the additional circumstance that the sale was made to
parties who were previously interested in the corpora-
tion; but that fact is of no importance unless it should
further appear that they had something to do with the
management of the property before as well as after the
sale; and that is not found. If stockholders and direc-
tors may deal with the corporation in their individual
capacity, the law will protect them as well as other
parties. Their relation to the corporation however
may be shown as bearing upon the question of good
faith, and will be weighed with the other evidence, but
will not as matter of law destroy what would otherwise
be a valid legal change of possession."

In Thompson on Corporations (2d Ed. Vol. 2)
§ 1224, many cases are cited to the proposition that
directors may deal with the corporation while it re-
mains solvent, with the knowledge of its stockholders,
and may lend it money or buy property of it the same
as a stranger. *Beach* v. *Miller*, 130 Ill. 162 (22 N. E.
464) and note to the same case, 17 Amer. St. Rep. 300.
In the latter note it is said: "Where a director does not
at the same time represent his own interest and that
of a corporation, there is little or no doubt that he may
contract with it, and buy or sell its property, or borrow
its money and give his note therefor, or loan it his
money and take in consideration its notes or other se-
curities, and enforce payment in case default should
be made therein." To the same effect see *Barnes* v.
*Spencer & Barnes Co.*, 162 Mich. 509, 522, 127 N. W.
752, 139 Amer. St. Rep. 587, 596, citing many cases.
The proposition is also well stated in 7 R. C. L. p. 481,
and many modern cases are there cited.

It is to be remembered that at the time of the trans-
action in question every one supposed the Jordan
Company solvent; so that rulings based on insolvency

at the time of the transaction are beside the mark; the mere fact that Sisk was a director does not, when, as here, he has shown that he occupied the position of a stranger, establish a prima facie case against him for violation of duty to the corporation.  See 10 Cyc. 810, where it is said that the burden of showing unfairness rests upon the challenging party.    Of the Connecticut cases cited in the opinion, *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 23 Atl. 708, was a case where three directors acted together as a majority of the board to secure for themselves advantageous contracts with the Company. This was directly the contrary of the present situation. *Nichols* v. *McCarthy*, 53 Conn. 299, 23 Atl. 93, was a case of a voluntary disposition of property to one standing in a relation of confidence and trust who took part in the transaction.   *Looby* v. *Redmond*, 66 Conn. 444, 34 Atl. 102, is too widely different on its facts to be pertinent.    In *State* v. *Culhane*, 78 Conn. 622, 63 Atl. 636, the case was that of a direct transaction between the administratrix and the sole heir of that estate. Further, I have carefully examined the cases upon which the prima facie doctrine asserted is deemed to rest, and do not find that the facts there under examination justify any such sweeping rule as stated.    Very briefly I will indicate what I mean: *First Nat. Bank of Hilger* v. *Lang*, 55 Mont. 146, 174 Pac. 597, was where a director was endeavoring to take advantage of his own negligence and that of other directors by asserting the validity of an unauthorized release to him by a cashier to whom the directors had never voted the power.   *Hanson Sheep Co.* v. *Farmers & Traders State Bank*, 53 Mont. 324, 163 Pac. 1151, was a case where the sole official and the real owner of the company directed its bank of deposit to transfer the company's funds to his personal account, and then caused suit in the name of his company against the bank for diversion of these

funds. The cases of *Booth* v. *Land Filling & Imp. Co.*, 68 N. J. Eq. 536, 59 Atl. 767, *Sage* v. *Culver*, 147 N. Y. 241, 41 N. E. 513, and *Ross* v. *Quinnesec Iron Mining Co.*, 142 C. C. A. 33, 227 Fed. Rep. 337, are all cases where directors contracted with themselves. *Drennen* v. *Southern States Fire Ins. Co.*, 164 C. C. A. 616, 252 Fed. Rep. 776, was a case of alleged conspiracy between interlocking directorates. *Pitman* v. *Elmore*, 93 Mo. App. 592, 67 S. W. 946, was the case of a director securing a preference where he was present at the meeting voting it but did not himself vote. *Woodroof* v. *Howes*, 88 Cal. 184, 26 Pac. 111, was a case where—though the director benefited did not vote—the three directors who did vote were mere dummy directors representing the other. In none of these cases, unless possibly *Pitman* v. *Elmore*, do I find any basis for the rule I understand this court has adopted; and in that case I cannot say with certainty that the ruling goes to the extent of the present ruling, for here all the circumstances showing the relationship are fully brought out. If it does go so far, then the Missouri case has overlooked the point which I think is overlooked in the majority opinion here. *Hallam* v. *Indianola Hotel Co.*, 56 Iowa, 178, 9 N. W. 111, admits fully the right of a director who dealt with the company. The director had loaned to the company, taken a mortgage and foreclosed, buying in at a small price. The court held that everything was all right up to the foreclosure sale, but that the director did not do all that, as an officer, he ought to have done to secure a larger price. There was no question of burden of proof.

We are not referred to any case in our reports which calls for the position taken by the majority, and the view adopted as to the burden of proof is strikingly inconsistent with the opinion in *Smith* v. *Skeary*, 47 Conn. 47. What boots it to say in one breath that as

matter of law a director may deal with the corporation as a stranger, and in the next to say that merely because he is a director he must as matter of law be deemed prima facie to have cheated or acted in bad faith to his corporation? I suppose some courts do hold that a director cannot in any manner contract with his corporation. 10 Cyc. 808. But certainly the more generally accepted and businesslike view is that such contracts may be made, provided the director does not occupy the position of both buyer and seller, but are voidable under varying conditions. 10 Cyc. 809. I do not differ at all from the court in its general statement of the ultimate duty of directors to their corporations. What I do wish to be understood as maintaining is that where a director, under conditions as stated in the finding, acting entirely independently of the corporation and in no way taking part on both sides of the transaction, avails himself of the right to deal with the corporation, as it is announced he may do in *Smith v. Skeary,* 47 Conn. 47, the fact alone that he is a director shall not, under such circumstances, stamp him as being prima facie guilty of fraud or breach of trust. This view is altogether too narrow, and may well discourage a director from coming to the aid of his company in time of need, and entirely destroys the effect of the rule that, if a director does not in fact or by necessary implication represent both sides, he is prima facie entitled to the benefit of the position of a stranger.

It appears to me that the rule adopted is not in accord with sound legal principles nor with good business policy. It is based on a technical relationship and not upon any real relationship of fact from which fraudulent conduct should be inferred. After Sisk had established a relationship which our own court and courts generally have said entitled him to be treated as a stranger, and after he had negatived the

claim, which is the very basis of liability in such cases, that he had acted on both sides in the transaction, he satisfied all preliminary requirements and was entitled to rest upon the situation, and it then became the duty of the receiver to go ahead with his proof, if any, of unfairness and breach of trust. In this case it was the receiver and not Sisk who failed to present his proof when, in the order of proof, it was his duty so to do.

The cases are numerous that a director, if in fact dealing as a stranger, is not forbidden so to deal. And my contention is that if, as in this case, the director has shown that what he was doing was done under such circumstances that he was not inhibited from so doing by the fact that he was a director, he shall not be subjected to the same burden he would have been under had he in fact represented both the corporation and himself.

In addition to the authorities already cited, I call attention to *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 23 L. Ed. 328, a case where a director loaned money to the corporation secured by a trust deed and on foreclosure bid in the property. Mr. Justice Miller, in the course of the opinion sustaining the transaction, said (p. 589): "While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as guides for dealings in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when . . . the transaction is open, and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent

to which it may safely be given." See also 139 Amer. St. Rep. p. 612.

I think the court has fallen into the fallacy explained in Thayer's Preliminary Treatise on Evidence, p. 353 *et seq.*, and that is the confusion of the burden of proof and the burden or duty of going ahead with evidence. The phrase "burden of proof " in actual use is ambiguous. It is sometimes used in one and sometimes in the other of these two senses. The decision rests, if I understand it, exactly upon such confusion. Attention to the situation upon the record will I think fully demonstrate this in view of the law stated above. The Jordan Company is being wound up as an insolvent estate by a receiver; Sisk presents his claim against the Company based upon a series of transactions with the Company. This claim is referred to a committee; the committee finds facts which show that Sisk, under the principles of law above stated, was dealing with the Company as a stranger. Having established this fact, and there being no question as to the figures in his claims, he had made out a prima facie case, or else the rule as to dealing as to strangers is practically of no consequence. Thereupon, it became the duty of the receiver, if he would show that in spite of his position as a stranger Sisk had in fact cheated and defrauded the Company, to go ahead and offer evidence upon that point. It appears from the finding that Sisk relied in the first instance upon his prima facie case as dealing with the corporation as a stranger, and that for some reason or other the receiver furnished no proof whatever with reference to the character of Sisk's transactions. And it was here that the receiver failed to recognize, and that I think the court fails to recognize, the position that the receiver was in; and if he chose not to attack the transaction by any evidence as to its character, then Sisk is completely pro-

tected by his proof that he was acting in fact as a stranger.

The substance of this important distinction appears well stated in a citation by Thayer, page 356, from an opinion by Brett, Master of the Rolls, in *Abrath* v. *North Eastern Ry. Co.*, L. R. 11 Q. B. D. 440, 452, as follows: "It seems to me that the proposition ought to be stated thus: the plaintiff may give prima facie evidence which, unless it is answered, either by contradictory evidence or by the evidence of additional facts, ought to lead the jury to find the question in his favor: the defendant may give evidence, either by contradicting the plaintiff's evidence or by proving other facts; the jury have to consider, upon the evidence given upon both sides, whether they are satisfied in favor of the plaintiff with respect to the question which he calls upon them to answer." See also another citation, Thayer, page 358, as follows: "In the *Banbury Peerage Case,*1 Sim. & St. 153, in the course of a question relating to the presumption of legitimacy, the judges were asked by the House of Lords, 'Whether in every case in which there is prima facie evidence of any right existing in any person the *onus probandi* be always, or be not always, upon the person or party calling such right in question'? They answered, through Mansfield, C. J., 'That in every case in which there is prima facie evidence of any right existing in any person, the *onus probandi* is always upon the person or party calling such right in question."

I agree of course with the doctrine that Sisk, presenting his claim to the receiver, has upon him the ultimate burden of proof in showing its validity, but that is an entirely different sense of the term from the burden of offering proof at some stage of the proceedings. The former never shifts, the latter may frequently shift. When Sisk showed a case, which

the committee has found in unmistakable terms, where he dealt with the corporation as a stranger, taking no part directly or indirectly in behalf of the corporation, he has established a prima facie case based on the position of a stranger, which throws the *onus* of further proof upon the defendant, and that the receiver, by neglecting to offer any evidence whatever, has failed.

If in fact a stranger had presented the claim, would it have been his duty, in addition to showing the facts on which he based his claim, to go further and establish as part of his main case that he was not a fraud or a cheat? I did not suppose so; and when Sisk established that he in fact dealt as a stranger, why is he not entitled to the presumption of honesty like any other stranger until the challenging party attacks his honesty?

This, as I understand it, is the application upon the present state of facts, of the distinction drawn by Professor Thayer between the burden of proof and the duty of going forward with evidence.

For these reasons I think there was no error.