ALFRED W. BOOTH

*v.*

THE LAND FILLING AND IMPROVEMENT COMPANY et al.

[Filed January 25th, 1905.]

1. Where corporate directors award a contract to themselves, the contract is voidable at the option of dissenting stockholders, and such directors have the burden of showing the fairness of the terms of the contract.

2. A stockholder who is also a director is not estopped to maintain a bill to restrain an action at law against the corporation by a firm composed of two other directors to recover for work on a contract awarded to them by the corporation because the complainant voted to allow defendants to do such work, where the resolution authorizing the work did not fix the price and complainant objected to the price fixed by defendants in their own behalf.

3. Where directors submit a contract in which they are personally interested to the stockholders, and they themselves, constituting the majority thereof, secure a majority vote in its favor, and they also constitute the majority of the directors who approve the contract, the terms of the contract, including the amount of compensation specified therein, are reviewable at the instance of the dissenting stockholders.

On order to show cause for preliminary injunction to restrain a suit at law.

*Mr. James Benny* and *Messrs. Collins & Corbin,* for the complainant.

*Messrs. Reed & Coddington,* for the defendants.

GARRISON, V. C.

This is a motion founded upon a bill and affidavits and a supplemental bill and affidavits to secure a preliminary injunction restraining the individual defendants Messrs. Dailey and Ivins from the further prosecution of a suit at law against the corporate defendant.

The Land Filling and Improvement Company is a New Jersey corporation, having one thousand shares of capital stock.

The complainant owns two hundred and fifty of these shares; Ivins, one of the defendants, owns two hundred and fifty, and Dailey, the other defendant, owns five hundred.

These three men constitute the board of directors of the company, Dailey being the president and Ivins the secretary and treasurer.

Dailey & Ivins are partners in business under that firm name.

There was a meeting of stockholders of the company on the 16th day of May, 1904, at which each of the three stockholders was present.

There was a resolution introduced at that meeting in the following words:

"*Resolved,* That the secretary is hereby instructed to notify Messrs. Dailey & Ivins that they can dump street sweepings and grade the same on the property of the Land Filling and Improvement Company, at Newark, whenever they so desire, and at the same prices formerly paid to Messrs. Booth, Dailey & Ivins."

Booth, Dailey & Ivins were formerly partners under that firm name.

There is a dispute between the parties as to the happenings at this meeting on the 16th day of May, with respect to the above-quoted resolution.

The complainant insists that he voted against the resolution, both as originally offered, which was in the form above quoted, and as subsequently amended, which amendment will be hereafter noted.

The individual defendants, upon the other hand, insist that when the resolution was offered the complainant moved that the words " at the same prices formerly paid to Messrs. Booth, Dailey & Ivins" be stricken out and the following words substituted, "at a price to be agreed upon later by the board of directors."

They insist that the amendment was accepted, and that the resolution, as amended, was adopted by the unanimous vote of all the stockholders, including the complainant.

The minutes bear out the contention of the defendants, and

furthermore show that at a meeting of the board of directors at which the complainant was present, held on the 26th day of May, 1904, the minutes of the stockholders' meeting were read and approved.

At the directors' meeting just mentioned a resolution was offered in the following language:

"*Resolved*, That the secretary be and that he hereby is instructed· to accept the proposition of Messrs. Dailey & Ivins for filling the property of the Land Filling and Improvement Company, at Newark, N. J., with street cleaning matter, for the prices named, to wit  *  *  * "

It is admitted by all of the parties that this resolution was passed by the affirmative votes of Messrs. Dailey and Ivins over the negative vote of the complainant.

At the same meeting a resolution was passed by a similar vote instructing the secretary to send out proposals for bids for dredging in front of the property of the defendant company, and authorizing the officers to accept the lowest bid for such dredging.

The proofs show that proposals for dredging were invited and bids were received, and that the complainant requested to be notified of the meeting of the directors at which the bids should be acted upon.

The other two directors refused this request, and awarded the contract for dredging to themselves.

The defendants Dailey & Ivins commenced the dredging and also the filling, and allege that they have completed the former, and have done some considerable work upon the latter.

The complainant, by his original bill, sought to have the court enjoin the individual defendants from doing any further work under either of the contracts for dredging and for filling.

Upon a hearing as to whether the court would grant a preliminary injunction the court refused so to do, among other reasons, because, as to the dredging, it appeared that the work had already been done, and as to the filling, it appeared that the complainant, at a stockholders' meeting, had voted with the other stockholders for a resolution authorizing Dailey & Ivins to do this very work.

The court at that hearing was not called upon to consider any-

thing concerning the price or compensation to be paid to Dailey & Ivins for the work already done, or that might be done in the future; the sole question, as the court conceived it, was whether the complainant, who was shown to have voted in favor of the defendants being authorized to do the work, might obtain a preliminary injunction to restrain them from doing such work.

Thereafter the defendants Dailey & Ivins commenced a suit at law against the defendant company for the sums of money alleged to be due to them for the dredging and for so much of the filling and grading as had been done to the date of the suit.

In such suit they claimed the sums named in the contracts alleged to have been made between them and the company.

Thereupon the complainant filed a supplemental bill and affidavits, setting up in the bill the beginning of this action at law, and praying that it might be restrained, and that this court review the question of amount recoverable by the individual defendants.

An order to show cause, with *ad interim* restraint, was granted, and the individual defendants came in with their affidavits.

They resist the issuance of a preliminary injunction, first, upon the ground that the complainant is in laches.

They insist that since the work sought to be recovered for in the suit at law has been done the complainant is estopped to deny their right to recover compensation at the rates mentioned in the contracts.

I do not think this argument should prevail.

The utmost that the defendants can claim in this suit is that the complainant, as one of the stockholders, voted that the individual defendants might be employed to do certain work, but the resolution authorizing such employment expressly reserved the fixing of the price to the directors.

There was not, in legal contemplation, any contract entered into by the vote of the stockholders.

They merely authorized the directors to enter into a contract; the most important term of the contract, namely, the

price at which the work should · be done, was not passed upon by the stockholders, but was left to be settled thereafter.

The complainant cannot, therefore, be said to be in laches when he comes into court so soon as the contractors, by legal process, set forth the claim that they make against the corporation.

By his vote at the directors' meeting he plainly gave notice to the other directors that he objected to their contracting with themselves at the prices named, and this was followed by his written protests to them.

Under these circumstances, they cannot now claim that he is estopped to question the amounts to be paid to them by the company for work done by them in the face of such notice and protest by him.

The next reason urged by the defendants is that the contracts in this case having been approved by a majority of the stockholders, the terms of said contracts, including the amount of compensation specified therein, are not reviewable by this court at the instance of the dissentient stockholder, and the court is referred to the case of *Hodge* v. *United States Steel Corporation, 64 N. J. Eq. (19 Dick.) 807 (Court of Errors and Appeals, 1902)* in support of this contention.

In the *Hodge Case* the contract attacked was between the corporation and a number of persons, some of whom were directors of the corporation.

The contract, in its entirety, had been submitted, a long time previous to a meeting of stockholders, to each of the stockholders, and by its terms was not to be binding until it had received the approval of the stockholders.

The complainant, Hodge, did not attend the meeting at which the contract was voted upon, and the court held that, in the absence of fraud or want of power on the part of the corporation, stockholders may lawfully enter into or authorize a contract between the company and a third party in which directors are personally interested, if it be done by them with notice of such interest.

In the case at bar the contracts were not submitted in their entirety to the stockholders, nor were such contracts in their

entirety ever voted upon by the stockholders; it cannot, therefore, be said that the stockholders, as such, ever passed upon the contracts now in suit.

The complainant, at the meeting of the directors where a complete contract was first considered, voted against the adoption of such contract, and by written protests thereafter gave notice to the others that he objected thereto.

The facts in the case *sub judice* so differ from those found by the court of errors to exist in the *Hodge Case* that the judgment therein is not applicable to this case.

The defendants, however, insist that the reasoning of the court in that case, and the legal effect of the judgment therein, changed the theretofore existing rules of law with respect to this subject-matter. They contend that the *Hodge Case* is authority for the principle that wherever directors submit a contract in which they are personally interested to the stockholders and secure a majority vote in favor of it, they may enter into and carry out such contract free from challenge, provided the corporation had power to make it and there was no actual fraud; and that this is so even if those directors who benefit by the contract constitute the majority of stock that authorized the contract and the majority of directors who approved it.

It need hardly be pointed out that under such circumstances the submission of the matter to the stockholders and securing the approval of a majority thereof is the veriest farce.

It is difficult to see, if the inference which the defendants draw from the *Hodge Case* be correct, what becomes of the inflexible principle that trustees are always accountable for their dealings with their trust, and that the burden is always on them to vindicate and justify their own actions with respect thereto.

I cannot see how notice affects the vital question involved.

I do not understand how a trustee can validate his act and shift the burden to the *cestuis que trust* by giving notice beforehand of the fact that he intends personally to benefit by dealings with the trust estate.

As I understand the law, a trustee may never deal with the trust estate in any way which enures to his personal benefit without assuming the burden of showing the propriety of his act,

if promptly and properly challenged by any of the *cestuis que trust.* To hold that a majority of trustees, who constitute also a majority of the *cestuis que trust,* may propose to the whole body of *cestuis que trust* a contract beneficial to themselves, and carry it through by their own votes, and then claim that they are beyond challenge except for actual fraud, is to radically alter all previously existing rules of law upon this subject, and I cannot accede to the argument that such is the intention or the effect of the decision of the court of errors in the cited case.

The court of chancery, since the decision of the *Hodge Case,* has had occasion to consider this question, and in the case of *Lillard* v. *Oil, Paint and Drug Co., 56 Atl. Rep. 254 (Vice-Chancellor Emery, 1903),* the court held that the doctrine of the *Hodge Case* did not alter the theretofore existing principle which made contracts entered into by directors with themselves reviewable by a court of equity at the instance of a dissenting stockholder with respect to the amount of compensation to be recoverable by the contractors from the corporation.

If my conclusion be sound that these contracts are not protected by the rule which relates to contracts authorized by stockholders, then it comes within the principle enunciated by the court of errors and appeals, and always applied to such contracts, that the terms of the contract itself will be entirely disregarded, so far as compensation is concerned, and the burden is on the contracting directors to show what they reasonably deserve to have for the work done, and no unjust exaction will be permitted.

This principle is clearly stated in the case of *Gardner* v. *Butler, 30 N. J. Eq. (3 Stew.) 702 (at pp. 724, 725) (Court of Errors and Appeals, 1879),* and has since been frequently enunciated and applied by our courts.

The further insistment is made on behalf of the individual defendants that since there is no distinct and direct allegation on the part of the complainant that the contracts between the corporation and the individual defendants are unjust and oppressive, or are fraudulent and unreasonable, therefore this court should not enjoin the prosecution of the suit at law.

It is the fact that there is no distinct charge in either the

original bill or the supplemental bill that the contracts are unjust and oppressive, fraudulent or unreasonable.

There are allegations that the filling contracted to be placed on the company's land by the defendants is obtained by them from the city of New York, and that they are paid by the city for taking it away, and that those who are thus paid by the city to remove the street sweepings are glad to find places to dump such sweepings, and inferentially, therefore, that any price asked for by those who wish to dispose of such sweepings is excessive and unreasonable.

If I had to determine upon the affidavits in this case whether the contract was a fair one or not, I should have great difficulty in finding any evidence that it is unfair and unreasonable, unjust or oppressive; but if the principle of law which I understand to be applicable is applied to this case, there is no such burden cast upon the complainant.

The cases hold that where directors contract with themselves, such contract is voidable at the option of a shareholder who promptly applies to the court; and that where work, services or material have been furnished under such contract the court will disregard its terms; and that the burden of showing what the work is worth, or what the materials and services are worth, is upon the contracting parties, and is not upon the complaining stockholder.

It must very often happen that a complaining stockholder has not such knowledge of the business, or has not facts within his ability to prove, which will enable him to properly charge and prove that the contract is of the character legally objectionable; and directors who deal with themselves must do so with knowledge of the law that if the contract is objected to they must carry the burden of showing its fairness and reasonableness as to price.

These considerations, among others, have led the courts to hold that upon the prompt application of the complaining stockholder the contract as to compensation will be disregarded, and the burden will be placed upon those claiming the compensation from the company of showing what the reasonable and fair amount should be.

What the complainant must show, therefore, to entitle him to

an injunction preventing the contracting directors from taking from the corporation the amount of money fixed by themselves is that such directors, by their own votes, made a contract with themselves.

Upon final hearing the court will determine the question as to whether the compensation fixed by the contract was fair and reasonable, and all other such questions, but will not attempt to dispose of that question upon the defendants' affidavits submitted in opposition to the motion for a preliminary injunction.

The complainant in this case, having shown that unless the law suit is stopped the whole subject-matter will be disposed of, is entitled to an injunction to hold matters as they now are until the final hearing of this suit.

I will advise that a preliminary injunction do issue.