[Civ. No. 10356. Third Dist. Feb. 15, 1962.]

THE ALHAMBRA-SHUMWAY MINES, INC., et al., Plaintiffs and Appellants, v. ALHAMBRA GOLD MINE CORPORATION, Defendant and Respondent.

W. J. Purciel for Plaintiffs and Appellants.

Jerome Weber, Carl T. Fetterly and Entenza & Gramer for Defendant and Respondent.

SCHOTTKY, J.—The Alhambra-Shumway Mines, Inc., a California corporation, on February 17, 1951, commenced this action against the Alhambra Gold Mine Corporation, a foreign corporation, to cancel a lease of mining property and equipment known as ''The Alhambra Mine.'' In February 1953 B. F. Parsons, as a stockholder and in behalf of all stockholders, joined as a plaintiff in the action.

Findings and judgment were entered in accordance with the following memorandum opinion of the trial court:

''One question only is presented by the plaintiffs for decision, namely, may the lease executed about January 1, 1947 by the plaintiff corporation to the assignor of the defendant corporation be rescinded because it was not approved by shareholders owning a majority of the plaintiff's shares.

''The evidence is sufficient to support the following findings of fact and conclusions of law.

''1. The lease in question required the approval of the shareholders under Sec. 3901 of the Corporations Code.

''2. There is no misjoinder of parties plaintiff. Both have legal capacity to sue.

''3. No restitution is required as a condition precedent to rescind under the facts of this case.

"4. The statute of limitations bars recovery by plaintiff corporation, but not by plaintiff Parsons.

"5. The principles of estoppel preclude any recovery by the plaintiff corporation. They do not apply to the shareholder Parsons.

"6. However, because of the laches of plaintiff corporation and its shareholders, plaintiffs should not recover. Judgment herein should declare the lease in question to be valid and existing. . . ."

Both the corporation and Parsons have appealed from the judgment.

The Alhambra-Shumway Mines, Inc., is the owner of a gold mine and certain mining equipment in El Dorado County. This mine operated until 1942 when pursuant to a government order the mine was shut down. In 1947 the corporation entered into a written lease of the mine with an assignor of the respondent for a period of 10 years. In 1948 this lease was amended by increasing the term and substituting respondent for the original lessee. The mine is substantially all the assets of the appellant corporation. The lease was never approved by the shareholders. For several years prior to January 1947 no annual meetings of shareholders were held. After that date and until January 1951 no annual meetings could be held because of the lack of a quorum. In 1949, after the respondent found a rich vein, the stockholders began to take an interest in their corporation. On February 8, 1951, the shareholders rejected the lease and thereafter attempted to rescind. This action was then commenced.

The only contention made by appellants in their brief is that "IN A DERIVATIVE ACTION BY A STOCKHOLDER TO DECLARE A LEASE CANCELLED, THE PLEADINGS AND EVIDENCE WERE INSUFFICIENT TO SUPPORT A JUDGMENT OF VALIDITY BASED ON LACHES."

The general rule as to what constitutes laches on the part of stockholders is well expressed in section 5875 of Fletchers Cyclopedia of Corporations, as follows:

"What constitutes laches is governed by the general rules applicable in all equity cases, and what constitutes an unreasonable delay depends largely upon the circumstances of each particular case. There is no inflexible rule for determining what length of time will constitute unreasonable delay. It is a question of fact, and the intervention of rights is an important test. If no prejudice has resulted from the delay, and the

status is the same, the defense of laches is not available, even though delay was long, while promptness is required if the property involved is of speculative or fluctuating value. As short a time as two years, one year, six months, or even two months has been held fatal in particular cases. If a stockholder acts as soon as he learns of a fraudulent or wrongful act and takes all reasonable steps to obtain relief within the corporation, and, as soon as he finds that he is unable to do so, brings suit to set the transaction aside, he is not chargeable with laches, nor will stockholders be deemed guilty of laches where, being residents of another state, they were unaware of the fraud until a short time prior to the institution of action by them. It is not laches to await the outcome of other suits by stockholders to gain the same relief or while the attorney general is suing for violation of law. Pendency of an arbitration agreement is not necessarily an excuse for delay in suing. Action must be begun before the administration of equitable relief has become unfeasible.

"Whether the court will fix the time according to the statute of limitations or not, as constituting laches, is largely, it seems, within its discretion, but laches may in flagrant cases be complete before the time for limitations. In any event, laches will not bar an action by a stockholder prior to the lapse of the period fixed by the statute of limitations, if he is free from fault."

 The record in the instant case shows that at the time the respondent Alhambra Gold Mine Corporation was organized and arrangements made for the transfer of the lease to it approximately $18,000 had been spent by respondent's predecessor. (This included rehabilitating the houses on the property, restoration of the power line, repairing the water supply line, repairing equipment and removing water from the mine.) After the lease was assigned to respondent some $57,427 was spent by it up to March 1950, and up to the time the mine was closed (a receiver was appointed and respondent ousted from possession) a total of $90,000 was spent.

On August 20, 1949, a gold strike was made. Mr. Griggs, the head of respondent corporation, spoke to appellant Parsons at the mine some three or four days after the strike was made. Griggs testified that Parsons complained about the propriety of exhibiting to visitors specimens of the gold ore.

There was considerable publicity about the strike. The Cali-

fornia Mining Journal, the official organ of the Western Mining Council, which has a membership of some 14,000, in its October 1949 issue carried an article about the strike. Newspaper stories concerning the gold discovery appeared in the Mountain Democrat published in Placerville, The Sacramento Bee, The Sacramento Union, San Francisco Examiner, San Francisco Chronicle, Los Angeles Times, Hollywood Citizen-News and the Placerville Times.

We believe that this evidence is sufficient to support the court's finding of laches unless section 3901 of the Corporations Code, which requires stockholders' approval of a lease of substantially all of the assets of a corporation, makes such a defense unavailable. ▮▮ In *King* v. *Los Angeles County Fair Assn.*, 70 Cal.App.2d 592 [161 P.2d 468], it is said at page 596: ". . . 'There is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine of laches, and each case as it arises must necessarily be determined by its own circumstances.' (*March* v. *Lott* (1909), 156 Cal. 643, 647 [105 P. 968].)

"In Ballentine on California Corporation Laws (1938 ed.), 186, section 201, it is said that 'Shareholders must act promptly or they will be barred by laches from questioning the validity of a sale and transfer of assets.' "

▮ In *Solorza* v. *Park Water Co.*, 86 Cal.App.2d 653 [195 P.2d 523], it is said that the transfer of the entire corporate assets without compliance with section 3901 of the Corporations Code is not void *ab initio*, but is to be regarded as an ultra vires act which may be avoided at the instance of the stockholders. ▮▮ And as stated in section 3453 of Fletcher Cyclopedia of Corporations, "a stockholder may be precluded from attacking an act as ultra vires by his laches."

▮ Appellants also contend that the pleadings were insufficient to raise the question of laches. The pretrial conference order states that the laches of the plaintiffs, or either of them, was an issue in the case. The defense was pleaded. There is, therefore, no merit in this contention.

In summary, we conclude that the question of whether the stockholders were guilty of laches was a question for the trial court to determine under all the facts and circumstances of the instant case. ▮▮ The learned trial judge was undoubtedly convinced that in the instant case the stockholders with knowledge that the officers had entered into the lease stood idly by and permitted respondent lessee to make large

expenditures and then after a strike was reported filed their stockholders' complaint. The record supports his conclusions. The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.