AMERICAN CAN COMPANY *v.* ORANGE PULP COMPANY, INC.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued March 8—decided April 17, 1962

*James J. A. Daly* and *Daniel E. Brennan, Jr.,* with whom, on the brief, was *Thomas F. Seymour,* for the appellant (defendant).

*Frank E. Callahan,* with whom was *Robert F. Cavanagh,* for the appellee (plaintiff).

ALCORN, J.   The plaintiff brought this action to recover the balance of the purchase price of cans sold to the defendant.  The defendant alleged, in a special defense, the plaintiff's breach of an agreement to supply cans of the sizes agreed on and in the time specified.   The defendant also filed a counterclaim for damages for breach of the claimed agreement.  The parties stipulated at the trial that, if the defense pleaded was insufficient, judgment might be rendered for the plaintiff for the unpaid balance of $3150.72 claimed to be due it.  The efficacy of this defense presents, therefore, the sole issue in this case and on this appeal. A second special defense was abandoned. The court rendered judgment for the plaintiff on the complaint and on the counterclaim.  The defendant has appealed.

The first assignment of error concerns the court's refusal to find eleven paragraphs of subordinate facts.   The claim is that these facts were admitted or undisputed.  The defendant has filed no appendix to its brief to support this claim.   Practice Book § 447.   None of the facts sought to be added are admitted in the pleadings.  We cannot resort to the contents of the exhibits, beyond the portions expressly found, since they are not a part of the record.   *Goldblatt* v. *Ferrigno,* 138 Conn. 39, 41, 82 A.2d 152.   In the absence of support from any source, no corrections can be made in the finding.

The court found that the plaintiff manufactures cans, sells canning machinery and related equipment and furnishes technical assistance and services to packers.   The defendant was engaged in bottling fruit concentrates.  In 1952, the defendant's

president learned of a frozen orange concentrate which was being marketed in cans manufactured by the plaintiff and bearing lithographed labels stating the contents of each can to be twenty-eight fluid ounces. That concentrate differed from the defendant's product in that it requires water to be added in the ratio of three and one-half to one, whereas the defendant's concentrate requires water to be added in the ratio of five to one. In the fall of 1952, the defendant's president told the plaintiff's representative that he wanted cans of the same type as those containing the concentrate which he had seen. He stated that he planned to "pack orangeade hot." This is a process in which the product, after being heated to 190 degrees Fahrenheit, is hermetically sealed and does not require freezing for safe storage. Due to a shortage, the plaintiff was not able to supply these cans to the defendant in 1952, but in 1953, indicated that they were available. During 1953, at the defendant's request, the plaintiff made test packs of the defendant's product using a "hot fill" and also a "cold fill" method, the latter method being a process in which the product was canned at room temperature but, in the case of defendant's product, required, to ensure safe storage at room temperature, an increased sugar concentration which made it unpalatable. In October, 1953, the plaintiff sent the defendant a proposed label design for the can which, it stated, was based on the use of a hot or cold fill process but which would not be applicable if the product was marketed in a frozen state. In November, 1953, the defendant notified the plaintiff that the solution of its problem was to "freeze my package." An entirely new canning operation was required in the defendant's plant to freeze its product in cans, in contrast

420

with its former process of bottling the product in glass.

By 1956, the defendant had decided to locate its canning operation in Bridgeport, and the plaintiff's equipment engineer came there to plan a layout for the operation, to advise concerning the purchase of equipment, and to provide technical assistance in its installation. The defendant had purchased a closing machine for six-ounce and twenty-eight ounce cans which affixes the top and seals the can as the final steps in the canning operation. In March, 1956, the defendant obtained sample cans from the plaintiff which were used, unsealed, in taste tests. In April, 1956, the plaintiff informed the defendant that, to allow for expansion due to freezing, the filler machine must be set to fill the cans to a height which would leave a headspace of about three-eighths to one-half inch in cans of six, twelve and twenty-eight ounce sizes. The plaintiff further cautioned the defendant to examine this height to be sure that it did not conflict with the labeled content. The plaintiff also stated that the defendant was in a better position to determine this height than the plaintiff and requested that the defendant pass on the filling height information to the manufacturer. Some five months later, in September, 1956, the plaintiff quoted prices on six, twelve and twenty-eight ounce cans. Four months later, in January, 1957, the defendant ordered 25,000 "401 x 411" cans, 50,000 twelve-ounce cans and 100,000 six-ounce cans. It was agreed in argument that the 401 x 411 can is a twenty-eight ounce can. The labels on the 401 x 411 cans were prepared by the plaintiff on the defendant's instructions and stated that the can contained twenty-eight fluid ounces and that the contents were frozen. The

plaintiff delivered the cans as ordered and received payments of $5259.23, which paid for the entire order with the exception of $3150.72, due for the six-ounce cans and the related labeling charge. In April, 1957, the plaintiff's food technologist and its service mechanic went to the defendant's plant to supervise the defendant's first packing. Thereafter, in May, 1957, the plaintiff notified the defendant, in substance, that its research representative had discovered that the 401 x 411 can, when closed with the top supplied, would not accommodate twenty-eight fluid ounces of the defendant's product after freezing.

From these subordinate facts, the court concluded that the plaintiff owed the defendant no duty to determine that the can purchased by the defendant could not hold twenty-eight fluid ounces of its product without bulging and distortion on freezing; that it was under no duty to notify the defendant of any such deficiency in the can's capacity; and that, consequently, there was no breach of duty to the defendant. The defendant assigns error in these conclusions. Although the assignment of error does not, in itself, assert in what manner the court erred in reaching these conclusions, it does appear, from the defendant's brief, that the claim is that the subordinate facts are insufficient to support these conclusions. The defendant's special defense originally alleged an agreement that the plaintiff would supply "twenty-eight (28) ounce cans" and that the plaintiff was unable to furnish the size cans agreed on and in the time specified. This original allegation was amplified by a more specific statement to the effect that the cans agreed on "would contain when filled twenty-eight (28) ounces of frozen product." We construe these allegations, in the light of the

defendant's present claims, as asserting that the plaintiff agreed that the cans supplied would accommodate twenty-eight fluid ounces of the defendant's product when frozen. From the facts recited above, it is apparent that the court did not find that the plaintiff agreed to furnish cans of the sort thus described. Moreover, the record does not disclose that the defendant attempted to have such a finding made. Since any duty to the defendant would have to rest on the contract alleged, the failure to find that such a contract existed necessarily precluded the existence of the duty which the defendant claimed flowed from it. The defendant, in its attack on the court's conclusions, leans heavily on excerpts quoted from the memorandum of decision. The memorandum of decision, quite properly, was not made a part of the finding, and it cannot be used to supplement the finding. *Stults* v. *Palmer,* 141 Conn. 709, 711, 109 A.2d 592; *Goldblatt* v. *Ferrigno,* 138 Conn. 39, 40, 82 A.2d 152. The court's conclusions were warranted by the subordinate facts found, and since no corrections can be made in the finding, the conclusions must stand.

The third assignment of error complains of the court's action in overruling three of the defendant's claims of law and is disposed of by what has already been said. These claims relate only to the duty asserted to be owed by the plaintiff to determine and notify the defendant of the inability of the can to hold twenty-eight fluid ounces without distortion and bulging on freezing and the plaintiff's claimed liability for damages consequent on the breach of that duty.

There is no error.

In this opinion the other judges concurred.