SIDNEY SARNER *v.* FOX HILL, INC., ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and PALMER, Js.

Argued November 5, 1963—decided March 3, 1964

*John S. Barton,* with whom were *Edgar W. Bassick III* and, on the brief, *Herbert H. Moorin,* for the appellant (plaintiff).

*Charles R. Covert,* with whom was *Raymond W. Beckwith,* for the appellees (named defendant et al.).

*John F. Lambert,* for the appellee (defendant Yervant).

KING, C. J. Fox Hill, Inc., hereinafter referred to as Fox Hill, owned and operated an inn in Ridgefield. The defendant George T. Barker, hereinafter referred to as the defendant, assumed the management of the inn in 1958 and successfully operated it at increasing profits up to the commencement of this action.

On December 3, 1959, the entire board of directors of Fox Hill consisted of the defendant, his wife, Bertha S. Barker, and his attorney. Of these three, only the defendant was a stockholder in the corporation, and his holdings, including those in his name as executor of the will of his mother, amounted to 425 shares. On the above date, the board of directors held a meeting. The defendant was present but abstained from voting. At that meeting it was voted to compensate the defendant for his management services by transferring to him 100 shares of treasury stock, which the board valued at $145 per share, a valuation which the plaintiff does not contest. This stock was transferred to the defendant on December 16, 1959. At the same meeting it was also voted that the defendant should be granted an option to purchase up to 250 additional shares at $120 per share. The option

was exercised only as to 50 shares, and this took place on March 10, 1960, the defendant paying for the stock in cash. In the meantime, on December 16, 1959, the defendant had acquired an additional 100 shares from a third party. Thus, he now owned, either outright or as a fiduciary, 675 shares of stock out of a total of 1000 shares outstanding. The other 325 shares were then owned by the plaintiff, who had become a stockholder in 1955.

Under § 17 of the by-laws, a majority of the total directorate was required for a quorum, and the votes of a majority of those present were required to constitute action by the board. The plaintiff claims that the board's action of December 3, 1959, as well as the subsequent transactions, was voidable, since the vote of the defendant's wife, as well as that of his attorney, must be considered as in reality the defendant's own vote, even though he personally abstained from voting.

An attorney is bound to advance, by all legal and proper means, the interests of his client committed to his care. See Canons of Professional Ethics, Nos. 10, 11, 15, 32, Practice Book, 1963, pp. 5, 7, 12. On the record before us, the attorney's vote cannot be considered other than that of his client, the defendant. Thus, the board's action and the transactions between the corporation and the defendant were voidable as to the plaintiff, and we are not required to consider the effect of the wife's vote. *Mallory* v. *Mallory Wheeler Co.,* 61 Conn. 131, 138, 23 A. 708; *Klopot* v. *Northrup,* 131 Conn. 14, 20, 37 A.2d 700; *Zaubler* v. *West View Hills, Inc.,* 148 Conn. 540, 545, 172 A.2d 604; *Adams* v. *Williamson,* 150 Conn. 105, 112, 186 A.2d 157; see note, 175 A.L.R. 577, 590. Even though the transactions are avoided, however, the defendant, if compensation

was due him for his managerial services, would remain entitled to it in a fair and reasonable amount. *Massoth* v. *Central Bus Corporation,* 104 Conn. 683, 691, 134 A. 236; *Hubbard* v. *Caserta,* 108 Conn. 567, 569, 144 A. 39; 1 Washington & Rothschild, Compensating the Corporate Executive (3d Ed.), pp. 219, 221; note, 175 A.L.R. 577, 600. There is no finding as to what amount would be reasonable compensation for the defendant's managerial services, nor is there any finding that all or any part of the 100 shares would constitute reasonable compensation for those services. The defendant had the burden of proving that the payment in the 100-share block of stock, even though at an agreed value of $145 a share, was fair and reasonable remuneration for his services, or, in other words, that reasonable compensation for his services would amount to at least $14,500. *Zaubler* v. *West View Hills, Inc.,* supra; note, 175 A.L.R. 577, 604; 1 Washington & Rothschild, op. cit., p. 221. It is true that the court in its memorandum of decision stated that the 100 shares represented reasonable compensation. But the memorandum of decision cannot replace or supplement the finding. *American Can Co.* v. *Orange Pulp Co.,* 149 Conn. 417, 422, 180 A.2d 628; *Stults* v. *Palmer,* 141 Conn. 709, 711, 109 A.2d 592. The fact remains that there is no support in the finding for the defendant's contention that he proved that the 100 shares represented reasonable compensation. As already pointed out, there is no finding as to the reasonable value of the defendant's managerial services. See *Sisk* v. *Jordan Co.,* 94 Conn. 384, 391, 393, 109 A. 181, 519. It is further claimed that even if the consideration given for the stock was less than its agreed value, there is an adequate remedy in damages and consequently the

plaintiff is not entitled to equitable relief. See *Maclary* v. *Pleasant Hills, Inc.*, 35 Del. Ch. 39, 46, 109 A.2d 830; *Blair* v. *F. H. Smith Co.*, 18 Del. Ch. 150, 165, 156 A. 207. On the facts of this case, such a conclusion would not necessarily follow as a matter of law, and since the trial court did not pass on this claim, we cannot rule on it. Therefore, the defendant failed to prove his right to retain all or any part of the 100 shares of treasury stock voted him as compensation for services.

On March 12, 1962, at a special stockholders' meeting called for the purpose, it was voted to sell substantially all of the assets of Fox Hill to John Yervant, also a defendant in this action, and thereafter to dissolve the corporation. At that time the applicable statutes were §§ 33-372 (d) (sale of assets) and 33-376 (c) (voluntary dissolution by resolution) of the General Statutes (Rev. to 1962). Each proposal thus passed upon required, in this case, a two-thirds vote of all outstanding stock. The plaintiff was not present at the meeting, and each proposal was adopted by a vote of the defendant, who was the sole stockholder voting and who held 675 shares out of the total 1000 shares.

Subsequently, on April 16, 1962, the plaintiff instituted this action, claiming, in effect, that the transactions by which the defendant acquired the 100 shares of stock and the 50 shares were voidable, so that the 150 shares, all but eight of which were needed to give the two-thirds vote required for each proposal, were not entitled to be voted by the defendant. Equitable relief was sought (1) compelling the defendant to retransfer the 150 shares to Fox Hill upon its return to him of the consideration by him given therefor; and (2) enjoining the sale of the assets of the corporation to the defend-

ant Yervant, and the dissolution of the corporation, pursuant to the vote of the stockholders' meeting of March 12, 1962. There is nothing in the finding to indicate that anything had been done, after the vote of March 12, 1962, to complete the sale or dissolve the corporation. The court held that the stock transactions between the corporation and the defendant were not voidable. As already pointed out, this holding was erroneous.

The defendant clearly was not entitled to utilize 100 of the shares he assumed to vote at the March 12, 1962 meeting.[1] Thus, the action there taken cannot be considered as having been approved by the two-thirds vote required under §§ 33-372 (d) and 33-376 (c). The plaintiff was entitled to avoid at least the transaction transferring the 100 shares and to have the sale and dissolution of the corporation enjoined, unless he had, by his conduct, lost his right to such relief. *Mills* v. *Tiffany's, Inc.*, 123 Conn. 631, 642, 198 A. 185; *Bassett* v. *City Bank & Trust Co.*, 116 Conn. 617, 628, 165 A. 557; *Solorza* v. *Park Water Co.*, 86 Cal. App. 2d 653, 658, 195 P.2d 523; *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corporation*, 200 Cal. App. 2d 322, 326, 19 Cal. Rptr. 208; *Michigan Wolverine Student Co-operative, Inc.* v. *Wm. Goodyear & Co.*, 314 Mich. 590, 597, 22 N.W.2d 884.

The court, as a second ground for its decision, held that the plaintiff's delay in challenging the defendant's right to ownership of 150 shares of the stock which he had voted in favor of the sale and dissolution was unreasonable and, in effect, disentitled the plaintiff to avoid the stock transactions

---

[1] Consideration of the validity of the exercise of the option to purchase the 50-share block thus becomes unnecessary, especially since a new trial in this case must be ordered.

out of which the 150 shares were acquired. Cases on this subject are collected in an annotation in 16 A.L.R.2d 467.

Unreasonable delay, that is, laches *(Gage* v. *Schavoir,* 100 Conn. 652, 664, 124 A. 535), consists of two elements: "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906; see also *Whittemore* v. *Hamilton,* 51 Conn. 153, 158; *Hartford* v. *Mechanics Savings Bank,* 79 Conn. 38, 41, 63 A. 658; *Bassett* v. *City Bank & Trust Co.,* supra, 629. There is nothing in the finding which would support an inference that prejudice existed, nor was there any finding that the plaintiff's delay did in fact prejudice the defendants. See *Kurzatkowski* v. *Kurzatkowski,* supra. The conclusion that the delay was unreasonable is unsupported by the subordinate facts and consequently cannot stand. This makes unnecessary any consideration of the plaintiff's claim that since laches was not pleaded in a special defense, it could not be considered by the court. The second ground of the court's holding was erroneous, and the judgment cannot be upheld, unless the defendants can support it on their claim of express ratification.

The board's action of December 3, 1959, was approved at the April 5, 1960 stockholders' meeting by the affirmative vote of at least a majority of the outstanding stock. The defendant asserts that this "ratification" precludes the plaintiff's attack on the defendant's acquisition of the company's shares. The plaintiff was not advised by notice or otherwise that such "ratification" was to be passed on at the meeting. He did not vote at the meeting and apparently left before the purported ratifica-

tion took place. Apart from the failure of the notice of the meeting to give any clue that such ratification was to be brought up, the defendant, as a stockholder, was the only stockholder who voted at that meeting; he, as previously indicated, had the burden of proving the fairness and reasonableness of the compensation he received, and his vote as the sole stockholder ratifying the transaction did not serve to absolve him of that burden.[2] *Massoth* v. *Central Bus Corporation,* 104 Conn. 683, 689, 134 A. 236; *Klopot* v. *Northrup,* 131 Conn. 14, 20, 37 A.2d 700; *Booth* v. *Land Filling & Improvement Co.,* 68 N.J. Eq. 536, 541, 59 A. 767; 3 Fletcher, Corporations (Perm. Ed. 1947 Rev.) § 983; 1 Washington & Rothschild, Compensating the Corporate Executive (3d Ed.), p. 228.

The other claims of the defendants do not require discussion.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[2] In this connection, see General Statutes § 33-323 (a) (2). This statute did not become effective until January 1, 1961, and consequently, we do not consider what effect, if any, it would have had on a case such as this.