[Civ. No. 11120.   Third Dist.   Jan. 25, 1966.]

ALHAMBRA CONSOLIDATED MINES, INC., et al., Plaintiffs and Appellants, v. ALHAMBRA SHUMWAY MINES, INC., et al., Defendants and Appellants.

Erwin P. Werner and S. E. Gramer for Plaintiffs and Appellants.

Robert E. Shields for Defendants and Appellants.

GOOD, J. pro tem.*—Plaintiff above named, herein called "Consolidated," appeals from an order granting a new trial in an action for conspiracy to slander title to a mining leasehold, trespass and dispossession by defendants (all being stated in a first cause of action) and for malicious prosecution (stated in a second cause of action) wherein judgment was entered upon a jury verdict for $83,000 damages against Alhambra Shumway Mines, Inc., its directors and a stockholder as well as other defendants who have since been dismissed. Because all of the issues on appeal relate equally to all defendants, "Shumway" herein, for convenience, will include both corporate and individual respondents. Shumway's motion for a new trial was grounded upon excessive damages, insufficiency of the evidence and error of law. The trial court granted it upon all of the grounds set forth "including specifically the ground of the insufficiency of the evidence to sustain the verdict." Consolidated assigned the judgment to appellant G. G. Davis before the motion for new trial was heard. Davis appeals separately from said order upon the sole ground of the timeliness of the notice of intent to move for a new trial. Consolidated's appeal is predicated upon a claimed abuse of discretion in granting said motion and urges that res adjudicata deprives Shumway of all defenses herein. These issues will be separately discussed below as will the issues raised by Shumway's cross-appeal from the judgment.

The appeals are the latest stage in a series of three lawsuits between Shumway, owner of the gold mining property, and Consolidated, its lessee. By a lease executed in 1947 and amended in 1948, Shumway leased the mine for 20 years to Consolidated. In February 1951 Shumway filed an action to rescind the lease on the ground that it was an invalid dis-

*Assigned by the Chairman of the Judicial Council.

position of substantially all corporate assets without the formal approval by vote or written consent of a majority of voting stockholders required by Corporations Code section 3901. The case bore the El Dorado clerk's file number 7021 and will sometimes be referred to by that number herein. Various aspects thereof were the subject of decisions by this court in 1953, 1957 and, finally, in February 1962. An order appointing a receiver was reversed in the case reported in 116 Cal.App.2d 869 [254 P.2d 599] because an injunction would have provided adequate remedy to protect Shumway's rights therein. The case was tried in 1955 and a judgment in favor of Consolidated was reversed because Consolidated had not paid its corporate franchise tax since 1950. This decision is reported in 155 Cal.App.2d 46 [317 P.2d 649]. The case was retried in 1960 and judgment in favor of Consolidated was affirmed by this court upon the ground of laches on the part of Shumway's officers and shareholders. Again, the decision is reported in 200 Cal.App.2d 322 [19 Cal.Rptr. 208]. The parties were embattled in case 7021 from February 1951 until February 1962, a period of 11 years.

The record shows that in 1949 a purportedly rich discovery was made by Consolidated and widely publicized but that further development by way of any mining operations was suspended immediately thereafter; and, at the time of an apparently unopposed resumption of possession by Consolidated in 1956, that Consolidated had not paid either the taxes or an annual rental of $100 as required by the lease since 1950. In 1956, Consolidated's president reentered the mine and commenced negotiations for a new lease. A stockholder, Rego, expended some $70,000 rehabilitating the mine, during the course of said negotiations. Rego left in 1957 when Consolidated's president (not Shumway) informed Rego that they could not operate the mine because they could not negotiate the new lease. The testimony concerning these negotiations is not entirely clear as to who instituted them nor why a new lease was considered necessary. Consolidated's president remained in possession for three or four months after Rego's departure and then left voluntarily. The property was unoccupied for several years thereafter. No order or other demand for possession appears to have been made by Shumway until in 1959 it served a notice of forfeiture on Consolidated. Ten separate breaches of lease were specified, all occurring since 1950.

Thereafter, in 1961, Shumway filed a quiet title action against Consolidated alleging a forfeiture by reason of said breaches of the lease and abandonment as well. In defense of its leasehold interest Consolidated filed an answer denying all breaches and alleging an estoppel by reason of the alleged malicious prosecution and maintenance of said case 7021 as well as trespass and the use of force and violence in preventing its possession and use of the mine. In a separate cross-complaint Consolidated sought damages in excess of $5,000,000 in three separate counts of trespass, conspiracy to slander title and malicious prosecution. That action, hereinafter referred to as "case No. 10391," although set for trial prior to the trial of the instant case, was continued by reason of the illness of Shumway's counsel, the late Aubrey H. Seed, Esq. The case is still pending in El Dorado County.

In January 1963, after its ultimate victory in the long pending case 7021, Consolidated filed the instant case. In the first count, Consolidated sought damages for conspiracy to slander its leasehold title, trespass and dispossession, all based upon acts alleged to have occurred during the long pendency of the rescission action. As above noted, the second cause was for malicious prosecution. Shumway's answer included a general denial and pleaded the separate defense of another action pending between the parties involving the same issues, being case No. 10391 discussed above. Whereupon, Consolidated resorted to the expediency of a unilateral praecipe for dismissal of its three causes of cross-complaint in said quiet title suit. The dismissal, however, still left the same allegations that formed the substance of the cross-complaint as well as the present complaint still pleaded by way of special defenses in its answer to the said quiet title suit.

As indicated above, a jury returned a verdict of $83,000 damages in favor of Consolidated, following which the trial court granted Shumway's motion for a new trial. Shumway has cross-appealed from the judgment, urging error in permitting the present damage suit to be tried before disposition of its quiet title suit and contending that it was an abuse of discretion not to have first tried the issue of its separate defense of the pendency of said quiet title suit. The issues raised by the appeals and cross-appeal will be discussed in three sections with further factual and procedural details supplied as may be pertinent.

## I

The issue of timeliness of the notice of intent to move for a new trial will be discussed first. It arises under the following circumstances: On June 25, 1964, at the time of entering the judgment on the verdict herein, the court clerk mailed a copy thereof to all attorneys of record. The copy included the date, book and page number of entry. Davis contends that the court lacked jurisdiction to grant the motion for a new trial because Shumway's notice of intention thereof was not filed until July 16 and was therefore 11 days late if the clerk's then voluntary action in mailing copies of the judgment constituted service of a notice of its entry under subdivision 2 of section 659 of the Code of Civil Procedure then in effect. Under the 1959 amendment to said section 659, subdivision 2 thereof required that notice of intention to move for a new trial must be filed by "the party intending" to so move "within 30 days after the entry of the judgment or 10 days after service upon him by any party of written notice of the entry of judgment, whichever is earlier." For some years prior thereto there was no reference to service, as such, in said section but the time specified began to run "after [the moving party's] receiving written notice of the entry of the judgment. . . ." (Since that time, the 1965 amendment sets the time limitation "within 10 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him by any party of written notice of entry of judgment. . . ." Section 664.5 was new. It was enacted with the amendment as part of the same act and creates a mandatory duty for the clerk to mail notice of entry of judgment in civil cases.)

Appellants' contention is not sound for the following reasons. It is well settled that a word in a statute is presumed to have the same meaning throughout. (*Corey* v. *Knight,* 150 Cal.App.2d 671, 680 [310 P.2d 673]; *Stillwell* v. *State Bar,* 29 Cal.2d 119, 123 [173 P.2d 313].) The relevant portion of the 1959 casting of said section 659, including its two subdivisions, constituted a single sentence, the subject of which was "The *party* intending to move for a new trial." (Italics added.) This could only mean an adverse party to the litigation. The word "party" is thus used in the accepted legal meaning of a person directly involved in and

party to a case pending in court. We are asked to enlarge the meaning of the word "party" when used in the predicate of the same sentence to include all persons, whether or not party to or interested in any degree in the litigation. This we cannot do unless the plain context requires or compelling reason exists that would demonstrate that such extension of meaning was the Legislature's intent.

In the light of *Cowee* v. *Marsh*, 50 Cal.2d 240 [324 P.2d 553], the context of the 1959 statute does not require this extension to be ascribed to the phrase "service by any party." That case held, at a time when the statute did not designate anyone who could give the required notice, that the voluntary action of a clerk in mailing a notice of entry of judgment (not merely a copy of the judgment as occurred here) was ineffective. The court, adopting the opinion of this court, per Warne, Justice pro tempore, said (at p. 243): " 'Mere possession of knowledge of the entry of judgment is immaterial insofar as it could fix any limitation upon the time within which a notice of intention to move for a new trial might be given by any party desiring to do so.' " Further (at page 244): "We conclude that under the statutory and case law it is essential to a valid notice of entry of judgment that the notice be given by a party to the action."

█ The Legislature is assumed to be aware of existing judicial decisions affecting the subject matter of proposed legislation. (*Kusior* v. *Silver*, 54 Cal.2d 603, 618 [7 Cal.Rptr. 129, 354 P.2d 657].) █ The 1959 legislation was within a year of the *Cowee* decision. The California Law Revision Commission in recommending the 1959 amendment stated: "Under this rule *the prevailing party* will be able, as at the present time, to shorten the time to move for a new trial or to vacate a judgment by giving prompt notice of the entry of the judgment. Should *he* fail to give such notice the time to move will expire 30 days after the entry of judgment." (Italics added.) (2 Cal. Law Revision Com., Rep. F-5.) It is of interest to note that in its comment on the 1959 amendments the State Bar's Committee on Continuing Education of the Bar notes: "Sections 659 and 663a, which previously did not state who must serve notice of entry of judgment in order to start the ten day limitation running, *now state clearly that service by any party is sufficient.* (Italics theirs.) *Service by a non-party* such as the court clerk still would not

start the ten day period running for filing notice of intention to move for new trial or to vacate judgment (see Cowee v. Marsh) [Citation.]." (Italics added.) ■ If the Legislature intended that service by a nonparty would be effective it could easily have used the words "service by any person" or "service by anyone" and thus suspend the rule of *Cowee* v. *Marsh, supra*. It did not do so.

■ We accordingly hold that, because no party to the action gave written notice of the entry of judgment, Shumway's notice of intention to move for a new trial was within the 30-day limit. The court had jurisdiction in the premises.

## II

■ As to the issues raised by Consolidated's appeal: Consolidated no longer urges its allegations of malicious prosecution and the sole question is whether there is any substantial evidence to support a judgment *in favor of Shumway* insofar as Consolidated's first cause of action embraces charges of conspiracy to slander title, trespass and dispossession from the mine. ■ The rule is that only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court granting a new trial. (*Brown* v. *Reliable Iron Foundry, Inc.,* 174 Cal.App.2d 294, 298 [344 P.2d 633].) The trial court is not bound by a conflict in the evidence and has not abused its discretion if any evidence would support a judgment for the moving party. The presumptions are in favor of the order. (*Delaney* v. *Ralph L. Smith Lumber Co.,* 168 Cal.App.2d 716, 718 [336 P.2d 597].) When the record is read in the light of these rules it is apparent that the order of the trial court was not an abuse of discretion and must be affirmed.

■ By not urging its allegations of malicious prosecution, Consolidated apparently conceded the propriety of the order granting the new trial insofar as concerns its cause of action for malicious prosecution. But malice, express or implied, remains an essential element of the claim of slander of title and, consequently, of any conspiracy to commit it. (*Gudger* v. *Manton,* 21 Cal.2d 537 [134 P.2d 217].) The record herein contains evidence that would support a finding of good faith and lack of express or implied malice on Shumway's part in the initial filing of case 7021 as well as in serving the notice of forfeiture in 1959 and the subsequent

filing of its action to quite title, case No. 10391, and the
execution of the two leases in 1960 claimed to have been part
of the alleged conspiracy. Advice of counsel was had in all
instances. There is no showing of a failure by Shumway to
fully and fairly disclose the facts to its counsel. These factors
can constitute a complete defense to charges of bad faith and
malice. (*Masterson* v. *Pig'n Whistle Corp.*, 161 Cal.App.2d
323 [326 P.2d 918].) Further, the 1960 leases were executed
upon the express understanding, respectively oral and writ-
ten, that they were conditioned upon the favorable termina-
tion of the litigation then pending.

The circumstances surrounding Consolidated's vacating
the property in 1957 support an inference of abandonment.
This inference is also buttressed by Consolidated's failure to
pay its corporate franchise tax and forfeiting its right to
transact business in California as a foreign corporation from
1950 until 1955, the date of reinstatement not appearing in
the present record. The evidence pertaining to negotiation
for a new lease, which as we have noted is somewhat ambigu-
ous, also tends to support the defense of abandonment. There
was a demand, purportedly by Shumway, for $15,000 for
delinquent taxes, accrued annual rental and other obligations
against the mine (whether incurred by Shumway or Consoli-
dated is not clear) that was reduced to $5,000. But Rego's
draft therefor was made payable to Consolidated, not Shum-
way. That is but one of many ambiguities in the 1956-1957
episode that would support an inference that at the time of
the negotiations the parties considered the old lease termi-
nated either by forfeiture or abandonment. ■ Authority
need not be cited for the propositions that abandonment of
leased property by a lessee is a defense to a claim of eviction
and that possession by a lessee during a period of claimed
ouster rebuts a claim of dispossession.

■ Further, the order is sustainable because of conflicts
in the evidence to support the award of $83,000 damages.
Consolidated relies solely upon (a) its initial expenditure of
some $85,000 from the inception of its lease until the 1949
strike of high grade ore; (b) the 1956-1957 expenditure of
some $70,000 by Rego; and (c) a mining engineer's testi-
mony that the mine had "a potential production capacity in
excess of twenty-five million dollars. Under proper manage-
ment. . . . [with] the potentiality of good returns, and

which I believe have to be watched from the standpoint of the investor.'' The record is devoid of assay values, production costs and other factors that would support an award for lost profits. The verdict was returned in a single sum. This was proper because punitive and actual damages need not be segregated unless a request is made. (*Turner* v. *Whittel*, 2 Cal.App.2d 585 [38 P.2d 835].) However, within the framework of the issues on this appeal, if the award is considered as punitive damages the order for new trial would have to be sustained because of the factors of evidence mentioned above that would exonerate Shumway of bad faith and malice. If considered as actual damages, we arrive at the same result because upon the evidence presented it is not possible to correlate the amount of award with any proper measure of damages. The amounts spent in development and rehabilitation were part of the risks assumed in any mining venture. They are not lost profits and do not represent the rental value of the leasehold during any period of dispossession. Further, the testimony of Consolidated's mining engineer as to the value of the 1949 ''strike'' was controverted by a mining engineer produced by Shumway.[1]

Consolidated also urges that affirmance of said case 7021 constituted res adjudicata of all and any issues that could arise out of any failure on the part of Consolidated to perform any covenant of said lease and deprived Shumway of all legal defenses herein. The complaint in case 7021 is in evidence. Aside from the allegations of matters necessary to invoke Corporations Code section 3901, there is only one allegation therein that might be construed as a breach of covenant. That allegation charges that Consolidated had removed minerals without accounting for royalties. Accounting therefor is prayed. The allegation does not appear to have been made by way of a breach that forfeited the lease. Findings of fact and conclusions of law supporting the judgment are not before us. Upon the record presented to us, we cannot determine that any matter was, or could have been, adjudicated between the parties in case 7021 except the fact of laches precluding the claim that the lease was invalid under the Corporations

---

[1]It may be remarked that the contradictory evidence recalls a passage of Herbert Hoover's memoirs, ''The Years of Adventure'' (Macmillan, 1951), wherein he writes (vol. 1, at p. 82) that gold mining ''is an unprofitable business in any country. Taking the world as a whole, the gold produced costs more than it sells for.''

Code.[2] That fact does not necessarily deprive Shumway of its defense to Consolidated's first cause of action. There is no merit in Consolidated's appeal from the order granting a new trial.

### III

On the day of trial, Shumway moved the court to have the issue of its defense of the pendency of case No. 10391 tried before the other issues. The clerk's file in that case was received in evidence. The motion was denied because the court properly believed that "this is the type of matter that should be taken up at the pretrial conference." Consolidated made no reference to this defense in its pretrial statement. Shumway mentioned it in its statement of the case but did not define it in its statement of the issues in its pretrial statement. The pretrial judge adopted and incorporated both pretrial statements in its pretrial order! No motion to consolidate appears to have been made in either of the cases. Shumway, on cross-appeal, assigns as error the court's denial of its motions for dismissal and nonsuit which were based upon the ground that an action to quiet title (case No. 10391) was pending which would resolve the issues raised by Consolidated's claim of conspiracy to slander title. This contention does not squarely meet the issues of Consolidated's claims of trespass and malicious prosecution. However, the granting of the new trial sets all the issues at large and the questions raised by Shumway's appeal become moot. The granting of the new trial vacates the judgment and places the cause in the same condition as before trial. (*Bloomquist* v. *Haley*, 204 Cal. 258, 261 [268 P. 364].) All issues between the parties are at large. The cross-appeal from the judgment is only operative if the order granting the new trial is reversed thus reinstating the judgment. (*Freeman* v. *LaMorte*, 148 Cal.App.2d 670, 675 [307 P.2d 734]; 3 Witkin, Cal. Procedure, Appeal, § 122, pp. 2298-2299.)

While it is ordinarily not the function of an appellate court to direct procedures in the trial court, the interests of justice require the comment that the present record of the

---

[2]Appellants' briefs have not been of assistance to the court. Factual contentions are made with reference to allegations pleaded rather than proved by evidence. Upon the record presented, the arguments are so elusive and inadequate that the point urged could be disregarded by reason of the absence of adequate argument and authority. (See *Boral* v. *Caldwell*, 223 Cal.App.2d 157, 163 [35 Cal.Rptr. 689]; *Estate of Lee*, 225 Cal.App.2d 578, 582 [37 Cal.Rptr. 572].)

two pending cases reflects the existence of serious procedural questions that were not defined or resolved at or before pretrial. The pretrial order (not made by the trial judge herein) contains uncertainties that cannot be resolved by the correlation of the two statements adopted as part of the order. Further, it is apparent from the record herein that there is grave doubt that the issues between the parties may be fully and finally determined without consolidation of the present case and the quiet title action.

The order granting a new trial is affirmed. Respondents' appeal is dismissed. Respondents Alhambra Shumway Mines, Inc., et al., are to recover costs on appeal.

Friedman, J., and Regan, J., concurred.