HENRY KOSINSKI *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS ET AL.

| SUPERIOR COURT | HARTFORD COUNTY | FILE NO. 181823 |
|---|---|---|

Memorandum filed January 24, 1974

*Henry Kosinski,* pro se, the plaintiff.

*Donald T. Miller* and *Judith A. Merrill,* both of Middletown, for the plaintiff.

*Norman Zolot,* of Hamden, and *Robert K. Killian,* attorney general, and *Alphonse C. Jachimczyk,* assistant attorney general, for the named defendant.

No appearance for the defendant International Association of Firefighters.

WALL, J. In October of 1970, the board of fire commissioners of the city of New Britain promulgated an amendment to § 11 of its rules and regulations, which dealt with head, facial and neck hair grooming requirements for members of the fire department. This event touched off a long series of events which have culminated in this appeal before the court.

The plaintiff, in response to the new regulations and other related events, filed three grievances with the appropriate agents of the city, in accordance with the collective bargaining agreement in effect between the city and the defendant union, the International Association of Firefighters. After several months of negotiation on the grievances, he concluded that to get the relief he was entitled to he would have to file a prohibited practice complaint with the Connecticut state board of labor relations, hereinafter referred to as the board. He announced his intentions in this respect to the Hartford Courant, which published an article to that effect on February 22, 1971.

On March 18, 1971, the union, in response to the plaintiff's expressed intention to file a prohibited practice complaint against it before the board, brought union charges against him. These charges alleged violations of article 15 of the international constitution, claiming that the plaintiff had engaged

in activities which tended to place the union "in disrepute with other labor organizations, employers, or the public."

On March 22, 1971, only four days after the charges were brought against him, the plaintiff filed his announced complaint with the board. The plaintiff had also filed a similar complaint against the city of New Britain on March 18, 1971, simultaneously with the bringing of the union charges against him. On April 26, 1971, more than a month after the plaintiff had filed his complaint with the board, a disciplinary hearing was held on the union charges. The trial board decided that the plaintiff had "placed the union in disrepute," fined him $150, and suspended him from active membership in the union. Following the sentence of the trial board, the plaintiff submitted an appeal to the international union without success.

On or about February 4, 1972, the plaintiff filed an amended prohibited practice complaint with the board, in the fifth count of which he dealt with the facts set out heretofore. On April 25, 1973, the board dismissed his complaint in its entirety. In the present action, the plaintiff is appealing the dismissal of the fifth count only.

The board, in its conclusions of law, held that the filing of a prohibited practice complaint by an employee against a union is an activity protected by the Municipal Employee Relations Act. General Statutes §§ 7-467—7-477. Further, it is a prohibited practice for a union to take punitive steps against such an employee. The board concluded that this protection also extends to the filing of a public announcement or press release of the intention to file such a complaint.

The board decided that a party who has a protected right to take an action which becomes a public

record also has an incidentally protected right to call attention to that action and thereby try to enlist support for his position, and further stated: "The question is then whether deviations . . . take the news release out of the protected sphere. This we find will depend on (a) whether the release goes beyond the content of the public charge or unfairly distorts it, and on (b) timing. In the present case we find that the content of the press release is a fair summary of the content of the complaint or charge later filed. The question of timing is more troublesome, since the press release was not simultaneous with the filing or nearly so but was issued over a month before the complaint was signed or filed. The longer the interval between the public statement and the later filing the less claim it has to partake of the protection of the subsequent public act. No one can be sure of the future and the uncertainty tends to increase with time. Even the intentions of firm or stubborn men may change or be frustrated, with or without changes in external circumstances. And if a statement of intention may be harmful (as this one was) then the harm may be done and the fulfillment of the intention (which alone justifies the statement) may never occur. As this possibility increases, the statement has less claim for incidental protection. Moreover there is some basis for believing that improper motives (e.g., a desire simply to hurt, Holmes' 'disinterested malevolence') are more likely to dominate where the statement is widely separated in time from the public act for which support may legitimately be enlisted. Upon weighing all these competing considerations we find that a public statement made as far in advance of actual filing as this one was is not entitled to the protection which would be accorded to the filing itself or to a nearly contemporaneous announcement of it."

There was absolutely no showing before the board, and it did not conclude, that the plaintiff has any "improper motives," that he was not "sure of the future," or that the "fulfillment" of his intention never occurred. Rather the plaintiff has from the outset persistently and consistently pursued every legal means available to him, at the proper times and in the proper manner, and followed through on all of them. There has been no showing of any indecision or lack of diligence on the plaintiff's part, nor any showing that his public announcement was intended as anything other than what it was, a simple statement that he would file a complaint against the union. And, of course, the plaintiff did file the complaint.

It should also be noted that the difficulties out of which the plaintiff's complaint arose began several months before his public announcement, having started prior to October, 1970. During the interval between October, 1970, and the filing of his complaint on March 22, 1971, there had been a continuing series of grievances, negotiations and discussions. The plaintiff had made his position and intentions known to the union on many occasions before he made his public announcement.

Further, the plaintiff's public announcement referred not only to the union but to the city of New Britain, against whom he also filed a prohibited practice complaint on March 18, 1971, simultaneously with the union charges brought against him.

In addition, it is of major importance that the union charges were filed against the plaintiff on March 18, 1971, that he filed his prohibited practice complaint against the union on March 22, only four days later, and that the union disciplinary hearing did not occur until April 26, 1971, more than a month after he had filed his complaint. By the time the

hearing date arrived, the union knew full well that the plaintiff's complaint had been filed, and it was in fact punishing him for it.

The board is attempting to import into the hearing what it states amounts to unreasonable delay, which consists of two elements: (1) the delay must be inexcusable, and (2) the delay must have prejudiced the other party. There is no such finding. See *Sarner* v. *Fox Hill, Inc.*, 151 Conn. 437, 444. Mere lapse of time (ten years) did not bar a suit for reinstatement, and there must have been (1) prejudice to the opposing party by reason of delay, or (2) circumstances making it inequitable to entertain the proceeding. *Niner* v. *Hanson*, 217 Md. 298.

It is hereby ordered that the dismissal by the board be revoked and that the relief prayed for by the plaintiff be granted.